No. 99-037

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 280

296 Mont. 525

989 P.2d 850

LINDA K. REISDORFF,

Plaintiff and Appellant,

v.

COUNTY OF YELLOWSTONE, et al.,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District, In and for the County of Yellowstone, The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy J. Whalen, Whalen & Whalen; Billings, Montana

For Respondents:

Richard J. Carstensen, Attorney at Law; Billings, Montana

Dennis Paxinos, Yellowstone County Attorney; Casey Heitz, Deputy County Attorney; Billings, Montana

Robert K. Baldwin, Goetz, Madden & Dunn, P.C.; Bozeman, Montana

Submitted on Briefs: July~22, 1999

Decided: November 23, 1999 Filed:

_____ Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiff, Linda Reisdorff, filed this action in the District Court for the Thirteenth Judicial District in Yellowstone County to recover damages from the Defendants for conversion, trespass, and violation of her constitutional rights. The District Court granted summary judgment to the Defendants. Reisdorff appeals from the judgment of the District Court. We affirm the judgment of the District Court.

¶2 Although the Appellant raises a number of issues, we limit our consideration to the following two:

¶3 1. Did the District Court err when it awarded summary judgment pursuant to 41(e), M.R.Civ.P. to those Defendants who were not served with a summons issued within one year from the commencement of the action?

¶4 2. Did the District Court err when it awarded summary judgment to governmental Defendants and the employees of those governmental entities based on quasi-judicial immunity? FACTUAL BACKGROUND

¶5 The events which form the basis for this case began in 1992 when Yellowstone County Animal Control Officer, John Fleming, investigated Reisdorff's treatment of her animals. In his affidavit, Fleming stated that on July 24, 1992, in response to complaints of animal cruelty, he searched Reisdorff's property. Assisting Fleming was Darlene Larson from the Billings Animal Shelter (BAS) and David Pauli of the Humane Society of the United States (HSUS). According to Fleming's affidavit, he, Larson, and Pauli found 300 animals on Reisdorff's property, including 90 dogs. Fleming impounded, examined, and returned six of Reisdorff's dogs. Fleming searched Reisdorff's property again on August 7, 1992. Fleming stated in his affidavit that during that search, Reisdorff asked him to take three of her dogs. He stated that he took the dogs to a veterinarian who recommended that they be destroyed because of their poor physical condition.

¶6 According to Reisdorff's affidavit, she did not consent to either of Fleming's searches of her property. She stated that if Fleming was granted permission at all it was from her husband, who she believed instigated the State's investigation to punish her for seeking a divorce.

¶7 In his affidavit, Fleming stated that each time he searched the property it was with the consent of either Reisdorff, the justice of the peace, or Reisdorff's husband.

¶8 After Fleming's two searches of Reisdorff's property, the State charged Reisdorff with one count of cruelty to animals on August 24, 1992.

¶9 Three days later on August 27, 1992, the justice of the peace issued an order impounding nearly 300 animals located on Reisdorff's property. The order required Reisdorff to feed, water, and care for the animals; to permit Animal Control reasonable access to ensure that the animals were properly cared for; and to obtain the consent of Fleming before disposing of any animals.

¶10 Subsequently, the State and Reisdorff agreed that the State would reduce its charge to a "warning" if Reisdorff met certain conditions. Pursuant to this agreement, on March~12, 1993, the Justice of the Peace ordered Reisdorff to reduce the number of animals on her property to: 15 dogs, 4 horses, and 2 cows. The order also required Reisdorff to find adequate homes for those animals she was unable to keep; to improve the "housing" for those she kept; and to obtain a kennel permit through the BAS.

¶11 After the Court ordered Reisdorff to reduce the number of her animals, according to Fleming's affidavit, he made several attempts to inspect Reisdorff's property, but Reisdorff refused to admit him. The reason, according to Reisdorff's affidavit, was that when Fleming inspected her property in August 1992, he introduced Parvo, an infectious disease, which resulted in the death of 28 of her dogs. Reisdorff stated that she would allow county officials to inspect her property when they made an appointment and she was present.

¶12 Fleming stated in his affidavit that because Reisdorff refused to allow them on her property, he and Jeffrey Michael, a deputy county attorney, met with the justice of the peace to discuss the difficulty of enforcing the Court's order. Michael stated in his affidavit that he proposed an order to the justice of the peace because Reisdorff would not permit inspection of her property. The justice of the peace signed the proposed order on June 3, 1993. Reisdorff stated in her affidavit that she was not notified of the meeting and was not present.

¶13 The June 3, 1993 order contained the same provisions as the previous order but added that upon the Animal Control's request, Reisdorff was to grant inspection of her property immediately; that if she unreasonably refused inspection, the requesting officer was authorized to arrest her for contempt; and that if violations of the original Court order were found on Reisdorff's property, Animal Control officials "may take steps it deems necessary to bring the defendant into compliance." According to Michael's affidavit, Fleming asked the justice of the peace if it was permissible, based on the order, to seize some or all of the remaining animals. Michael stated that the justice of the peace gave both Fleming and him full permission to seize, remove, retain, and treat any or all of the remaining animals on Reisdorff's property at the discretion of the animal control officer pursuant to Michael's proposed order.

¶14 Reisdorff stated in her affidavit that she had scheduled an appointment with Fleming to inspect her property on June 7, 1993. However, according to Reisdorff, before the meeting took place and while Reisdorff was not present, Fleming entered Reisdorff's property without notice on June 4, 1993. Fleming stated in his affidavit that on June 4, 1993, he and other interested individuals inspected Reisdorff's property. He stated that he inventoried 169 animals. Of those he impounded 108. He stated that he then moved the impounded animals to the Billings Animal Shelter (BAS)

¶15 On June 7, 1993, the justice of the peace held a meeting in his chambers to discuss the impounded animals. According to Fleming's affidavit the meeting was attended by Fleming, Michael, Pauli, and Chris Thimsen, who was Reisdorff's lawyer at the time. Fleming stated that those in attendance discussed the disposition of Reisdorff's animals, including the possibility of private adoption and euthanasia. According to Fleming, the justice of the peace stated that Reisdorff was allowed no more than 15 dogs.

¶16 After June 4, 1993, Fleming stated in his affidavit, that he inspected Reisdorff's property several times and found no violations. On December 6, 1993, the justice of the peace quashed the conditions of the March 12, 1993 order and dismissed the State's charge against Reisdorff with prejudice.

¶17 Reisdorff filed a complaint on September 20, 1994 against: Yellowstone County; the City of Billings; the Yellowstone County Sheriff's Office of Animal Control; the Billings Animal Shelter; John Fleming; Darlene Larson; Scott Lance of the BAS; and Does 1 through 10. Reisdorff claimed that the Defendants exceeded the scope of their authority and unlawfully impounded and euthanized her animals. In her complaint, Reisdorff alleged two counts: (1) that the Defendants trespassed and converted her property, and (2) that the Defendants violated her rights under the Fourth, Fifth, and Fourteenth Amendments, which entitles her to recovery pursuant to 42 U.S.C. §§ 1983, _85, -86, and _88. On September 20, 1994, the clerk issued a summons for each of the named Defendants.

¶18 On February 13, 1995, the District Court granted the Defendants' motion to dismiss with respect to Fleming, Larson, and Lance but denied the motion with respect to the City of Billings and Yellowstone County.

¶19 On April 14, 1997, with leave of the District Court, Reisdorff amended her complaint to substitute named Defendants for the Doe Defendants. Her amended complaint listed the same Defendants as her original complaint and it replaced the Doe Defendants with the Animal Welfare League (AWL) and its representative, Vicki Brewster; and the Humane Society of the United States (HSUS) and its representative, David Pauli. Reisdorff alleged that Pauli and Brewster acted in concert with the original Defendants. She also alleged that all of the Defendants had defamed her. On December~22, 1997, the District Court granted summary judgment in favor of the substituted Defendants concluding that summonses for the Doe Defendants had not been issued within one year as required by 41(e), M.R.Civ. P. Subsequently, on October 21, 1998, the District Court granted the original Defendants' motion for summary judgement concluding that each was entitled to judicial immunity.

STANDARD OF REVIEW

¶20 We review appeals from summary judgment de novo. Motaire v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's order which grants summary judgment, we apply the same standards as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In Bruner, we set forth the following procedure

for deciding and reviewing summary judgment issues: The movant must demonstrate that no genuine issue of material fact exists. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

ISSUE 1

¶21 Did the District Court err when it awarded summary judgment pursuant to Rule 41(e), M.R.Civ.P. to those Defendants who were not served with a summons issued within one year from the commencement of the action?

¶22 A civil action is commenced when the plaintiff files a complaint. M.R.Civ.P. 3. The plaintiff must then present a summons to the clerk for issuance. M.R.Civ.P. 4C. The summons must be issued within one year after the action is commenced. M.R.Civ.P. 41(e). If the summons is not issued within that time, the action must be dismissed. M.R.Civ.P. 41(e); Hadford v. Credit Bureau of Havre, Inc., 1998 MT 179, ¶ 37, 289 Mont. 529, ¶ 37, 962 P.2d 198, ¶ 37. "In addition to named defendants, [Rule 41(e)] provides protection for defendants who are fictitiously named under § 25-5-103, MCA; such a defendant also is entitled to dismissal if a summons is not issued within one year of the commencement of the action." Hadford, ¶ 37.

¶23 Hadford involved facts similar to those in this case. In that case, after obtaining default judgment against her former employer in a wrongful discharge action, Hadford brought an action to hold the Credit Bureau of Havre and John Does liable for the default judgment as her former employer's alter ego. Hadford commenced her action against the Credit Bureau and John Does I through IV, in September 1995. Summons was timely issued and served on the credit bureau. We held that since no summonses were issued for the John Doe defendants within one year of the filing of Hadford's complaint in September 1995, John Does I through IV were entitled to dismissal with prejudice of Hadford's action against them. Hadford, ¶ 38.

¶24 This action was commenced when Reisdorff filed a complaint on September 20, 1994. In her complaint, Reisdorff listed the named Defendants and Does 1 through 10. The day Reisdorff commenced this action, the clerk issued a summons for each of the named Defendants, but not the Doe Defendants. On April 14, 1997, Reisdorff amended her complaint to designate the Doe Defendants as the AWL, Brewster, HSUS, and Pauli. The clerk issued a summons for each of these Defendants on June 20, 1997, which was more than two and one-half years after Reisdorff commenced this action.

¶25 When Reisdorff commenced this action and named Doe Defendants in her complaint, she had one year to cause the clerk to issue summonses directed to them. Since she failed to do so, the Defendants

substituted for the Doe Defendants are entitled to dismissal pursuant to Rule 41(e), M.R.Civ.P., as a matter of law. We conclude that the District Court did not err in awarding the Defendants summary judgment pursuant to 41(e), M.R.Civ.P. because the Plaintiff failed to cause summonses to be issued within one year of the commencement of this action.

ISSUE 2

¶26 Did the District Court err when it awarded summary judgment to governmental Defendants and the employees of those governmental entities based on quasi-judicial immunity?

¶27 The 1972 Montana Constitution provides that the government is not immune from suit unless the legislature enacts a statute by a two-thirds vote of each house. Brunsvold v. State Dept. of Inst. (1991), 250 Mont. 500, 504, 820 P.2d 732, 734; (citing Mont. Const., art. II, § 18 (1972)). The legislature has enacted such a statute pertaining to judicial actions. Section 2-9-112, MCA provides: Immunity from suit for judicial acts and omissions:

(1) The state and other governmental units are immune from suit for acts or omissions of the judiciary.

(2) A member, officer, or agent of the judiciary is immune from suit for damages arising from his lawful discharge of an official duty associated with judicial actions of the court.

(3) The judiciary includes those courts established in accordance with Article VII of the Constitution of the State of Montana.

The purpose of the statute is to permit judges to exercise judicial functions independently, without fear of consequences. Brunsvold, 250 Mont. at 504, 820 P.2d at 734. The statute, however, should be strictly construed. "Any statute in derogation of a constitutional right should be strictly construed. If the legislature has not clearly provided for immunity, this Court has no business creating immunity." Brunsvold, 250 Mont. at 507, 820 P.2d at 737 (Trieweiler, T., concurring).

¶28 In this case, Reisdorff argues that when the Defendants searched her property and removed her animals, they were not entitled to immunity because they were not agents of the judiciary involved in an official duty. The Defendants argue that they acted pursuant to the justice of the peace's orders, and thus are entitled to immunity.

¶29 In Montana, to determine whether a person is an agent of the judiciary pursuant to §~2-9-112, MCA, we inquire into the association between the person's tasks and the judicial action of the court. One who is directly involved in an act of the judiciary is immune. City of Great Falls v. Price (1989), 238 Mont. 99, 101, 775 P.2d 1260, 1261. Conversely, one whose tasks are ministerial or administrative is not immune. Brunsvold, 250 Mont. at 505, 820 P.2d at 735.

¶30 In City of Great Falls, we concluded that a city zoning technician was entitled to judicial immunity

when he abated a nuisance on another's property pursuant to a court order. 238 Mont. 99, 775 P.2d 1260. We concluded that the zoning technician was directly involved in an act of the judiciary, and because he was an agent of the city, it too was immune. City of Great Falls, 238 Mont. at 101, 775 P.2d at 1261. Those who conduct administrative or ministerial tasks, however, are not entitled to judicial immunity. Brunsvold, 250 Mont at 505, 820 P.2d at 735. In Brunsvold, we held that a probation officer who incorrectly calculated a prisoner's good time credits was not entitled to judicial immunity. 250 Mont. at 505, 820 P.2d at 735. We concluded that the probation officer "was not so intimately associated with a judicial act as to be an agent of the judiciary discharging an official duty associated with judicial actions of the court." Brunsvold, 250 Mont. at 505, 820 P.2d at 735. The facts in this case are more analogous to those in City of Great Falls than to those in Brunsvold. The governmental Defendants in this case were at all relevant times, directly implementing the justice court order to: "Take what steps it deems necessary to bring the defendant into compliance."

¶31 Therefore, we conclude that the District Court did not err when it held that the state tort claims for trespass and conversion were barred by §~2-9-112, MCA.

¶32 State immunity laws, however, do not shield the State or its officials from liability based on 42 U.S. C. § 1983. Morrison v. Jones (9th Cir. 1979), 607 F.2d 1269, 1273. To be immune from liability for claims based on 42 U.S.C. § 1983, the immunity must be found in federal law. However, there is a substantial body of federal law discussing judicial immunity including Stump v. Sparkman (1978), 435 U.S. 349, 98 S. Ct. 1099; see Roland v. Phillips (11th Cir. 1994), 19 F.3d 552; Eggar v. City of Livingston (9th Cir. 1994), 40 F.3d 312.

¶33 In Stump, the United States Supreme Court established a two-part test for determining when a judge is entitled to immunity from a § 1983 action. The first part of the test is whether the judge dealt with the plaintiff in a judicial capacity. Stump, 435 U.S. at 362, 98 S. Ct. at 1107. If the judge was not dealing with the plaintiff in a judicial capacity, then there is no immunity. If the judge was dealing with the plaintiff in his or her judicial capacity, however, the second part of the test is whether the judge acted in the "clear absence of all jurisdiction." Stump, 435 U.S. at 357, 98 S. Ct. at 1105.

¶34 In this case, when the justice of the peace issued his June 3, 1993 order, he was clearly acting in his judicial capacity. The effect of his order was to prohibit Reisdorff from continuing to violate his previous order issued on August 27, 1992, which required Reisdorff to feed and care for her animals. The justice of the peace also had jurisdiction because Reisdorff agreed to abide by certain conditions in exchange for the State's dismissal of its charge of animal cruelty.

¶35 From the doctrine of judicial immunity has come the foctrine of quasi-judicial immunity. See Turner v. American Bar Ass'n (N.D. Texas 1975), 407 F.Supp. 451, 482. Quasi_Judicial Immunity is more limited than the immunity afforded Judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law. The Doctrine is not for the benefit of a defendant_actor but rather for the benefit of the public whose interest it is that quasi-judicial officers should be at liberty to exercise their functions unfettered by fear of legal consequences. Turner, 407 F.

Supp. at 482. Courts have consistently held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order. See Patterson v. Von Riesen (8th Cir. 1993), 999 F.2d 1235, 1240.

¶36 In this case, Reisdorff did not argue that the order was facially invalid. The governmental Defendants were directly implementing the justice court's order of June 3, 1993. We conclude that the District Court did not err when it awarded summary judgment to governmental Defendants and the employees of those governmental entities based on quasi-judicial immunity.

¶37 For these reasons the judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART