No. 01-517

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 44

BARBARA MILLER,

　　　　　Plaintiff and Appellant,

　　v.

CITY OF RED LODGE, MONTANA,

　　　　　Defendant and Respondent.

APPEAL FROM:　　District Court of the Twenty-Second Judicial District,
　　　　　　　　In and for the County of Carbon, Cause No. DV 00-37,
　　　　　　　　The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　　　Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

　　　　　For Respondent:

　　　　　　　　Jared S. Dahle, Nelson Law Firm, Billings, Montana

　　　　　　　　　　　　Submitted on Briefs:　April 18, 2002

　　　　　　　　　　　　　　Decided:　March 13, 2003

Filed:

_____
　　　　　　　　　　Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1      Following a dog bite incident, Respondent City of Red Lodge ("City") filed criminal charges against the dog's owner, Appellant Barbara Miller, and obtained an order from Red Lodge City Judge Carol S. Anderson to seize and impound the allegedly vicious dog. The City served Miller with Judge Anderson's order and Miller elected to euthanize the dog instead of boarding it at a local veterinary clinic. Miller then filed suit against the City in the Thirteenth Judicial District Court, Yellowstone County, which was later removed to the Twenty-Second Judicial District Court, Carbon County.

¶2      Miller's complaint against the City included due process, equal protection, statutory infirmity, double jeopardy, and 42 U.S.C. § 1983 claims. Upon motion by the City, the District Court granted summary judgment to the City on Miller's due process, equal protection, statutory infirmity, and double jeopardy claims but denied the City's motion for summary judgment on the § 1983 claim. Subsequently, the City filed a second motion for summary judgment regarding the § 1983 claim, on judicial and quasi-judicial immunity grounds, which the District Court granted. Miller appeals from the District Court's grant of summary judgment in regard to the § 1983 claim. We reverse and remand.

¶3      The sole issue on appeal is whether the District Court erred when it granted the City's motion for summary judgment on the § 1983 claim pursuant to the doctrines of judicial and quasi-judicial immunity.

BACKGROUND

¶4 In the summer of 1999, Miller resided in Red Lodge, Montana, in a rental property owned by Gene Culver. On July 22, 1999, Culver visited Miller's residence to perform an inspection on the property. As Culver attempted to inspect the property, Miller's dog, an Akita named Mocha, bit Culver causing serious bodily injury. As a result of the incident, the Red Lodge City Attorney filed a criminal complaint against Miller on July 23, 1999. The criminal complaint charged Miller with: maintaining a public nuisance, a misdemeanor, in violation of § 7.02.091(1)(a) of the Red Lodge Municipal Code; failure to keep a domestic animal within or upon her own property, a misdemeanor, in violation of § 8.02.010 of the Red Lodge Municipal Code; and maintaining a nuisance animal, fourth offense, a misdemeanor, in violation of § 8.04.080(E) of the Red Lodge Municipal Code. The City Attorney also moved the City Court to "order the Red Lodge Police to immediately seize [Miller's] dog, Akita, and to place the dog in a facility that keeps animals, at [Miller's] sole expense, pending the outcome of this case."

¶5 On July 23, 1999, City Court Judge Carol S. Anderson ordered Miller to post bond in the amount of $500.00 and ordered the Red Lodge Police Department to immediately seize Mocha and board it at Miller's expense. On the evening of July 24, 1999, Red Lodge City police officers went to Miller's residence to execute Judge Anderson's order. The police officers were unable to seize Mocha but successfully served Miller with a copy of the order. According to Miller, she did not have sufficient funds to pay the $500.00 bond or the

estimated boarding fees. Therefore, on July 25, 1999, Miller had Mocha euthanized at a veterinary clinic.

¶6 On August 5, 1999, Culver filed a complaint against Miller which sought money damages, punitive damages, and reimbursement for medical expenses. On January 21, 2000, Miller filed: (1) an answer to Culver's complaint; (2) a counterclaim against Culver alleging violations of the Montana Uniform Residential Landlord-Tenant Act, harassment, and negligent infliction of emotional distress; and (3) a third-party complaint against the City challenging the constitutionality of the City's dog ordinances and asserting due process, equal protection, double jeopardy, and 42 U.S.C. § 1983 claims. On May 3, 2000, the District Court bifurcated Miller's actions against Culver and the City. This appeal addresses only those issues which pertain to Miller's suit against the City.

¶7 On October 3, 2000, the City filed a motion for summary judgment which argued that no material facts existed that entitled Miller to relief under any of the alleged theories for recovery. Following a hearing on the matter, the District Court, on December 5, 2000, granted the City's motion in part and denied it in part. The District Court granted the City's motion as to Miller's due process claim, equal protection claim, constitutional challenge to the City ordinances, and double jeopardy claim. However, the District Court concluded that material issues of fact did exist regarding the alleged § 1983 constitutional deprivation. Accordingly, the District Court denied the City's motion for summary judgment as it pertained to the § 1983 allegations.

¶8 On March 8, 2001, the City filed a second motion for summary judgment. This time, the City argued that it was immune from § 1983 liability pursuant to the doctrines of judicial and quasi-judicial immunity. On April 27, 2001, Miller filed a cross-motion for summary judgment. The District Court held a hearing on the summary judgment motions on May 2, 2001. On May 7, 2001, the District Court granted the City's motion for summary judgment and denied Miller's cross-motion for summary judgment. In granting the City's summary judgment motion, the District Court concluded that all of the public officials implicated in the action enjoyed immunity from suit. Therefore, by extension, the District Court concluded that "Miller's § 1983 action against the City fails as a matter of law by reason of the Doctrines of Judicial Immunity and Quasi-Judicial Immunity."

¶9 On May 29, 2001, Miller filed a motion requesting the District Court to reconsider its summary judgment rulings. The District Court denied Miller's motion. Miller appeals from the District Court's May 7, 2001, order of summary judgment. Miller's appeal does not challenge the initial summary judgment ruling with respect to the due process, equal protection, double jeopardy, and statutory infirmity claims.

STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment *de novo,* applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Vivier v. State Dept. of Transp.,* 2001 MT 221, ¶ 5, 306 Mont. 454, ¶ 5, 35 P.3d 958, ¶ 5. This Court has stated that:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue

5

does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred. [Citations omitted.]

*Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903.

## DISCUSSION

¶11 Did the District Court err when it granted the City's motion for summary judgment on the § 1983 claim pursuant to the doctrines of judicial and quasi-judicial immunity?

¶12 As indicated above, on January 21, 2000, Miller filed a third-party complaint against the City wherein she challenged the constitutionality of the City's dog ordinances and asserted due process, equal protection, and § 1983 claims. On December 5, 2000, upon motion by the City, the District Court entered summary judgment in favor of the City on all but the § 1983 claim.

¶13 The District Court denied the City's summary judgment motion on the § 1983 claim because it found that the following material facts existed:

First, there are questions regarding whether Miller was deprived of a constitutional right. The question of whether the attempted removal of Mocha was unreasonable, in light of the facts alleged by Miller, must be answered by the jury.

Second, was it reasonable to substitute an *ex parte* Order to seize for a search warrant based upon probable cause? Third, does Red Lodge have an "unwritten policy" which results in the selective, retaliatory, enforcement of its dog ordinances as Miller alleges?

Fourth, whether the City's policy amounts to deliberate indifference to Miller's constitutional rights is also a fact question. Did the police officers act with deliberate indifference to Miller's privacy and due process rights when attempting to seize Mocha without a search warrant? Again, were their actions

6

reasonable? The Court finds the question of liability of the City and its police officers mu[st] be reached by the jury.

Finally, there are questions of fact as to whether the City's policy of allowing seizure of a dog through an *ex parte* Order rather than a search warrant, when a dog is on private property, is the underlying force behind the deprivation, if any, of Miller's due process rights. Also, if there is a policy of selective, retaliatory, enforcement of dog ordinances, did this lead to deprivation of Miller's constitutional rights? [Citations omitted.]

¶14 On March 8, 2001, the City filed another motion for summary judgment on the § 1983 claim. This time, the City argued that summary judgment was warranted because "the City, through the actions of its municipal employees, [is] immune from suit under § 1983 pursuant to the doctrine of quasi-judicial immunity." Essentially, the City maintained that the City Attorney's acts of filing the criminal complaint and moving to impound Miller's dog constituted "integral part[s] of the judicial process." Therefore, pursuant to *Imbler v. Pachtman* (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, the City Attorney enjoyed an absolute quasi-judicial immunity from suit. Next, the City argued that Judge Anderson acted within her "judicial capacity" and did not act "in clear absence of all jurisdiction" when she issued the *ex parte* order. Pursuant to *Stump v. Sparkman* (1978), 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, the City argued that Judge Anderson enjoyed an absolute judicial immunity from suit. Finally, the City insisted that the police officers, in serving the order of seizure upon Miller, faithfully "executed a facially valid court order." Therefore, pursuant to *Coverdell v. Department of Social and Health Servs.* (9th Cir. 1987), 834 F.2d 758, the police officers enjoyed an absolute quasi-judicial immunity from suit. As all of the City's officials maintained immunity from suit, the City submitted that it too, by extension, enjoyed

7

immunity. The City cited *Reisdorff v. County of Yellowstone*, 1999 MT 280, 296 Mont. 525, 989 P.2d 850, in support of its "immunity by extension" theory.

¶15    Based on the argument and authority submitted by the City in support of its second motion for summary judgment, the District Court recanted its initial statements regarding the § 1983 claim:

> Upon careful review of the doctrines of judicial immunity and quasi-judicial immunity, in addition to [the officers'] depositions, the Court finds such "reasonableness" questions were improperly raised.
>
> Rather, the Court finds the proper analysis of Miller's § 1983 action is whether the city officials involved in this case are protected by judicial immunity or quasi-judicial immunity. A determination of this issue boils down to three questions: First, did City Attorney Thomas, when filing the Complaint, act in the performance of an integral part of the judicial process? Second, did Red Lodge Judge Carol Anderson act in clear absence of all jurisdiction when issuing the *ex parte* Order? Third, were the officers involved acting pursuant to a facially valid court order?

The District Court analyzed the federal case law addressing the asserted immunities and concluded "[t]he answer to the first question is yes, to the second question is no, and to the third question is yes." Based on the answers to the above questions, the District Court entered summary judgment in favor of the City, concluding that "Miller fails to demonstrate the City and its officials acted beyond their jurisdiction or without authorization of law. As such, Miller's § 1983 action against the City fails as a matter of law by reason of the Doctrines of Judicial Immunity and Quasi-Judicial Immunity." The District Court relied upon *Reisdorff* for the "immunity by extension" proposition submitted by the City.

8

¶16    In *Reisdorff*, a justice of the peace from Yellowstone County ordered Linda Reisdorff to reduce the number of animals on her property from approximately three hundred to fifteen dogs, four horses, and two cows. Reisdorff later allegedly refused to allow authorities to inspect her property. Therefore, the justice of the peace issued an *ex parte* order which (1) ordered Reisdorff to immediately grant inspection of her property or face the prospect of arrest for contempt and (2) granted animal control officials authority to "take steps it deems necessary to bring the defendant into compliance" in the event the officials discovered violations of the first order. The justice of the peace gave the officials full permission to seize, remove, retain, and treat any or all of the remaining animals on Reisdorff's property at their discretion.

¶17    Ultimately, the animal control officials impounded one hundred and eight of Reisdorff's animals. Thereafter, Reisdorff filed suit against numerous defendants, including Yellowstone County and the City of Billings, claiming that the defendants exceeded the scope of their authority and unlawfully impounded and euthanized her animals. Reisdorff's complaint alleged that she was entitled to recovery, in part, pursuant to § 1983. The District Court granted summary judgment in favor of the defendants concluding that each was entitled to judicial immunity. Reisdorff appealed the summary judgment ruling to this Court.

¶18    As for the § 1983 claim, we correctly recognized that state immunity laws "do not shield the State or its officials from liability based on 42 U.S.C. § 1983." *Reisdorff*, ¶ 32. To assert immunity from § 1983 liability, the immunity must lie in federal law. We then referenced the two-part test for judicial immunity discussed in *Stump* and the doctrine of

quasi-judicial immunity discussed in *Turner v. American Bar Ass'n* (N.D. Texas 1975), 407 F.Supp. 451. We determined that the justice of the peace "was clearly acting in his judicial capacity" and did not act in the clear absence of all jurisdiction. *Reisdorff*, ¶ 34. Further, we concluded that the local authorities acted in furtherance of the court order, the validity of which Reisdorff did not challenge. *Reisdorff*, ¶ 36. Accordingly, we held that "the District Court did not err when it awarded summary judgment to governmental Defendants and the employees of those governmental entities based on quasi-judicial immunity." *Reisdorff*, ¶ 36. Based on the federal case law discussed below, we conclude that we erred in *Reisdorff* when we affirmed the summary judgment ruling on the § 1983 claim in favor of Yellowstone County and the City of Billings pursuant to the doctrines of judicial and quasi-judicial immunity.

¶19   Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

¶20   In *Monell v. New York City Dept. of Social Servs.* (1978), 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, the United States Supreme Court held that municipalities and other local government units are "persons" for purposes of § 1983. To impose liability on a local government unit, a claimant must establish the following:

Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2035-36.

¶21 Stated another way, in evaluating a local government's § 1983 liability, courts must determine: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the local government unit is responsible for that violation.[1] *Collins v. City of Harker Heights, Texas* (1992), 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261. However, a municipality or local government unit cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality or local government unit cannot be held liable under § 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. A plaintiff must show that the local government action was taken with the requisite

---

[1] Obviously, a court must determine whether a § 1983 plaintiff has suffered a constitutional deprivation prior to engaging in the *Monell* "policy" or "custom" analysis. For, as the Supreme Court stated in *City of Los Angeles v. Heller* (1986), 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806:

[N]either *Monell*, nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point. [Citation Omitted.]

degree of culpability and must demonstrate a direct causal link between the action and the deprivation of federal rights. *Board of County Com'rs of Bryan County v. Brown* (1997), 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626. "[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[2] *Pembaur v. City of Cincinnati* (1986), 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452.

¶22 Federal case law reveals that in approximately the mid 1970s, the Supreme Court embarked upon parallel tracts of § 1983 development–on the one hand it continued to cultivate the local government § 1983 liability, while, nearly simultaneously, it continued to expand upon immunities from § 1983 liability.[3] In *Owen*, 445 U.S. at 637, 100 S.Ct. at 1408, the Supreme Court noted the absence of express immunity language in § 1983, but stated that "we have, on several occasions, found that a tradition of immunity was so firmly rooted in

---

[2] The Ninth Circuit Court of Appeals frames the inquiry into a local government's § 1983 liability as follows:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

*Oviatt By and Through Waugh v. Pearce* (9th Cir. 1992), 954 F.2d 1470, 1474 (citation omitted).

[3] *See Owen v. City of Independence, Missouri* (1980), 445 U.S. 622, 637-38, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673, and 15 Am. Jur. 2d *Civil Rights* §§ 104-119 (2000) for various applications of the federally recognized absolute and qualified immunities from § 1983 liability.

the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'" In *Owen*, the Supreme Court recapitulated the types of government officials who maintained immunity from personal liability based on a historical tradition of immunity. Following this analysis, the Court concluded:

> [T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded the city of Independence by the Court of Appeals. We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.

*Owen*, 445 U.S. at 638, 100 S.Ct. at 1409. The Court further expanded upon this notion in a footnote following the above statement:

> The governmental immunity at issue in the present case differs significantly from the official immunities involved in our previous decisions. In those cases, various government officers had been sued in their individual capacities, and the immunity served to insulate them from personal liability for damages. Here, in contrast, only the liability of the municipality itself is at issue, not that of its officers, and in the absence of an immunity, any recovery would come from public funds.

*Owen*, 445 U.S. at 638, 100 S.Ct. at 1409, n.18.

¶23    In *Kentucky v. Graham* (1985), 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114, the Supreme Court sought to clarify the distinction between "personal and official capacity action suits." There, the Court again summarized the elements of personal and official capacity liability. Next, the Court discussed the differences in the defenses to liability as follows:

13

When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. *See Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity). In an official capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

*Graham*, 473 U.S. at 166-67, 105 S.Ct. at 3105-06 (citations omitted).

¶24 Finally, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit* (1993), 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517, the Supreme Court reaffirmed its prior rulings on local government immunity from § 1983 liability. Therein, the Supreme Court stated:

[W]e reaffirmed in *Monell* that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." But, contrary to respondents' assertions, this protection against liability does not encompass immunity from suit. Indeed, this argument is flatly contradicted by *Monell* and our later decisions involving municipal liability under § 1983. In *Monell*, we overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as it held that local governments were wholly immune from suit under § 1983, though we did reserve decision on whether municipalities are entitled to some form of limited immunity. Yet, when we took that issue up again in *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980), we rejected a claim that municipalities should be afforded qualified immunity, much like that afforded individual officials, based on the good faith of their agents. These decisions make it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit–either absolute or qualified–under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury.

*Leatherman*, 507 U.S. at 166, 113 S.Ct. at 1162 (citations omitted).

¶25 Despite the foregoing case law, this Court affirmed a summary judgment ruling in favor of the defendants in *Reisdorff*. In *Reisdorff*, ¶ 17, we noted that the plaintiff "filed a complaint . . . against: Yellowstone County; the City of Billings; the Yellowstone County Sheriff's Office of Animal Control; the Billings Animal Shelter; John Fleming; Darlene Larson; Scott Lance of the BAS; and Does 1 through 10." This Court framed the § 1983 summary judgment issue on appeal as, "Did the District Court err when it awarded summary judgment to governmental Defendants and the employees of those governmental entities based on quasi-judicial immunity?" *Reisdorff*, ¶ 4.

¶26 As the above federal case law indicates, our blanket affirmation of immunity in favor of *all* of the defendants in *Reisdorff* constituted error. In *Reisdorff*, we correctly applied the doctrines of judicial and quasi-judicial immunity to the extent we immunized any "employees of those governmental entities" from individual § 1983 liability. Further, while *Reisdorff* does not expressly address this issue, the local government units would have been entitled to summary judgment on the § 1983 claim in the absence of a constitutional deprivation, as alluded to in *City of Los Angeles* above. However, to the extent that we afforded the local government units immunity from § 1983 liability pursuant to the doctrines of judicial and quasi-judicial immunity, *Reisdorff* is hereby overruled.

¶27 In the case at bar, Miller filed a third-party complaint against "Safeco Property and Casualty Insurance Companies, Hoiness Labar Insurance, Inc., Gene Culver and City of Red

15

Lodge."[4]  Miller did not include any of the City officials as named defendants in the complaint, in individual or official capacities.  Nevertheless, the City ultimately obtained summary judgment based upon individual immunities unavailable to local government units.

¶28     In ruling upon the City's first motion for summary judgment, the District Court appeared focused on the appropriate § 1983 liability issues.  That is, it queried whether a constitutional deprivation occurred and, if so, raised questions regarding the origin of the alleged deprivation.  The second motion for summary judgment, with its corresponding assertion of immunity, seemingly derailed the initial deprivation analysis.  Unfortunately, it appears that this Court motivated the diversion with our erroneous application of the § 1983 immunities in *Reisdorff*.

¶29     Admittedly, it sounds somewhat disingenuous to proclaim that the District Court erred when it granted summary judgment on the § 1983 claim to the City on judicial and quasi-judicial immunity grounds.  After all, the District Court did so primarily based on our direction in *Reisdorff*.  However, for the reasons discussed above, *Reisdorff* erroneously misconstrued and misapplied the § 1983 immunities as they apply to local government units.  Therefore, we must reverse the District Court's order of summary judgment.  We do not intend to pass judgment on the substantive immunity analyses undertaken by the District Court in regard to the individual officials.  For, the dispositive flaw in this case occurred when the City obtained immunity by extension.

---

    [4] Miller attributed liability to the City, in part, under the theory that "the enforcement of its ordinances . . . violated the constitutional rights of Miller to equal protection and due process of law."

16

¶30 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE