DA 06-0843

FILED

October 17 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 261

ROBERT SILVESTRONE,

       Plaintiff and Appellant,

  v.

PARK COUNTY, a political subdivision of the State of Montana,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DV-06-67
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Ronald F. Waterman and KD Feeback, Gough, Shannahan, Johnson &
Waterman, Helena, Montana

      For Appellee:

          Steven R. Milch, Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana

Submitted on Briefs:  August 15, 2007

Decided:   October 17, 2007

Filed:

                              Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1   Robert Silvestrone (Silvestrone) appeals from an order of the Sixth Judicial District Court, Park County, granting Park County's (County) motion for summary judgment and denying Silvestrone's motion to amend his complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2   Park County Sheriff's deputies arrested Silvestrone for misdemeanor assault in May of 2002. The officers transported Silvestrone to the Park County jail. Silvestrone spent three days in jail before he made his initial appearance before the Justice of the Peace. Silvestrone, acting without counsel, entered a plea of guilty during his initial appearance. Justice of the Peace Deanna Egeland accepted Silvestrone's plea and ordered that Silvestrone pay a $350 fine.

¶3   Silvestrone sought legal advice after his guilty plea. He petitioned the District Court through counsel for post-conviction relief and filed a motion to withdraw his guilty plea in June of 2002. The District Court granted Silvestrone's motion to withdraw his guilty plea on December 17, 2002, and remanded his case to the Justice Court for a jury trial.

¶4   On the same day that the District Court granted Silvestrone's motion to withdraw his guilty plea, the Justice of the Peace issued a bench warrant for Silvestrone's arrest for failure to pay the fine specified in his original sentence. Two years later, in December of 2004, officers arrested Silvestrone on the bench warrant and transported him to the Park County jail. The County moved to dismiss the original charge upon discovering the District Court's order remanding the matter to the Justice Court for trial. The Justice of the Peace granted the motion.

2

¶5 Silvestrone filed a tort action in District Court on May 11, 2006. Silvestrone named the County as defendant. Silvestrone claimed actual damages and emotional duress stemming from the Justice of the Peace's wrongfully issued arrest warrant. The County filed a motion for summary judgment on June 6, 2006. Silvestrone moved to amend his complaint to encompass the actions of both the Justice of the Peace and the Park County agents and employees who were "directed to execute" the warrant. Silvestrone's proposed amended complaint also asserted a cause of action arising under the "Constitution and Laws" of Montana.

¶6 The District Court held a hearing on the summary judgment motion. At the hearing, as well as in his brief opposing summary judgment, Silvestrone asserted the need for more time to conduct discovery. Despite these assertions, however, Silvestrone failed to file a motion pursuant to M. R. Civ. P. 56(f) for additional time for discovery at any time during the proceedings. The District Court nevertheless allowed Silvestrone an additional sixty days for discovery and permitted the parties to submit additional briefs regarding the County's motion for summary judgment. The District Court eventually granted the County's motion for summary judgment. The court also denied Silvestrone's motion to amend his complaint. Silvestrone appeals.

**STANDARD OF REVIEW**

¶7 We review a district court's decision to grant summary judgment *de novo*, using the same criteria applied by the district court under M. R. Civ. P. 56. *Miller v. City of Red Lodge*, 2003 MT 44, ¶ 10, 314 Mont. 278, ¶ 10, 65 P.3d 562, ¶ 10. The moving party must demonstrate that no genuine issues of fact exist. *Miller*, ¶ 10. The non-moving party must

3

then prove, by more than mere denial and speculation, that a genuine issue of fact does exist. *Miller*, ¶ 10.  If no genuine issues of fact exist, the court must determine if the moving party is entitled to judgment as a matter of law.  *Miller*, ¶ 10.  We review legal determinations for correctness.  *Miller*, ¶ 10.

## DISCUSSION

¶8      Silvestrone argues on appeal that the District Court granted summary judgment prematurely.  He asserts that the District Court conducted the proceedings with excessive haste.  Silvestrone contends that the County's motion for summary judgment preempted discovery necessary for resolving certain factual issues.  He also asserts that the District Court improperly provided the County with "blanket" or "absolute" immunity in conflict with Montana's constitutional provision subjecting the government to suit for injury to person or property.  Mont. Const. art. II, § 18.

¶9      Silvestrone's argument concerning the abbreviated period for discovery disregards both the procedures and policies relating to summary judgment.  The defendant may move for summary judgment at any time after a party files a complaint.  M. R. Civ. P. 56(b). Summary judgment serves to encourage judicial economy and to eliminate the delay and expense of unnecessary trials.  *Klock v. Town of Cascade*, 284 Mont. 167, 173, 943 P.2d 1262, 1266 (1997).  Parties opposing summary judgment can move the court for additional time to conduct discovery pursuant to M. R. Civ. P. 56(f).

¶10     Silvestrone complains that the hastened pace of the proceedings and the inadequate time for conducting discovery prevented him from uncovering potentially relevant evidence and witnesses.  The record reveals, however, that despite these assertions Silvestrone filed no

4

Rule 56(f) motion. Silvestrone failed to provide the court with any affidavits that might demonstrate the need for additional time for discovery. *See Heggem v. Capitol Indem. Corp.*, 2007 MT 74, ¶ 20, 336 Mont. 429, ¶ 20, 154 P.3d 1189, ¶ 20; *Morales v. Tuomi*, 214 Mont. 419, 426, 693 P.2d 532, 535-36 (1985). The District Court attempted to accommodate Silvestrone by granting an additional sixty days for discovery despite the lack of a formal motion, an affidavit, or assertions of substance.

¶11 Once the County established the absence of genuine issues of fact, Rule 56(c) required Silvestrone to provide more than mere speculation of possible issues of fact. *Miller*, ¶ 10. Silvestrone's failure to provide meaningful submissions raising genuine issues of fact entitled the District Court to rule on summary judgment without providing additional time for discovery.

¶12 Silvestrone next challenges the District Court's grant of summary judgment as inappropriate in light of the "constitutional nature" of the rights asserted. The 1972 Montana Constitution abrogated the common-law doctrine of sovereign immunity from suit in Article II, Section 18. Mont. Const. art. II, § 18. The Montana Constitution allows such immunity only if the legislature established it by a two-thirds vote. Mont. Const. art. II, § 18; *Brunsvold v. State*, 250 Mont. 500, 504, 820 P.2d 732, 734 (1991).

¶13 We previously have indicated that immunities separate and distinct from sovereign immunity remained unaffected by the language of Article II, Section 18. *State ex rel. Dept. of Justice v. District Court*, 172 Mont. 88, 560 P.2d 1328 (1976) (prosecutorial immunity); *Koppen v. Board of Medical Examiners*, 233 Mont. 214, 759 P.2d 173 (1988) (quasi-judicial immunity). We do not need to determine here if the common law doctrine of judicial

5

immunity also survived Article II, Section 18, as the legislature enacted § 2-9-112, MCA, in 1977 to codify the doctrine of judicial immunity. *Mead v. McKittrick*, 223 Mont. 428, 430, 727 P.2d 517, 518-19 (1986).

¶14  Section 2-9-112, MCA, provides that "[t]he state and other governmental units are immune from suit for acts or omissions of the judiciary." We have held that judicial immunity of the government arises "'whenever the judicial power of the state is put to use in a judicial action.'" *Mead*, 223 Mont. at 431-32, 727 P.2d at 519 (quoting *Knutson v. State*, 211 Mont. 126, 129, 683 P.2d 488, 490 (1984)). We have noted that the language of the immunity statute applies to judicial acts with "no stated limitation." *Knutson*, 211 Mont. at 128-29, 683 P.2d at 490.

¶15  Silvestrone asks this Court either to deem § 2-9-112, MCA, unconstitutional as conflicting with the intent of the framers of Article II, Section 18, or to prohibit its application on summary judgment in light of the fundamental rights involved. This Court has recognized the legislature's compliance with the requirements laid out in Article II, Section 18, that specifically allow for the establishment of judicial immunity. *See e.g. Brunsvold*, 250 Mont. at 504, 820 P.2d at 734; *Knutson*, 211 Mont. at 128, 683 P.2d at 490; *Reisdorff v. County of Yellowstone*, 1999 MT 280, ¶ 27, 296 Mont. 525, ¶ 27, 989 P.2d 850, ¶ 27, *overruled on other grounds by Miller v. City of Red Lodge*, 2003 MT 44, ¶¶ 18, 26, 314 Mont. 278, ¶¶ 18, 26, 65 P.3d 562, ¶¶ 18, 26. We have noted the limits of state immunity laws such as § 2-9-112, MCA. *Miller*, ¶ 18; *Germann v. Stephens*, 2006 MT 130, ¶¶ 48-53, 332 Mont. 303, ¶¶ 48-53, 137 P.3d 545, ¶¶ 48-53.

6

¶16 We also have noted the opportunity for plaintiffs to hold the State and its representatives accountable for violations of federal statutory and constitutional rights with actions based on 42 U.S.C. § 1983. *Miller*, ¶ 18; *Germann*, ¶¶ 47-53. Silvestrone alleged a violation of Montana's "Constitution and Laws." He did not bring an action under § 1983. He cannot avoid the application of § 2-9-112, MCA. Furthermore, Silvestrone failed to challenge the constitutionality of § 2-9-112, MCA, before the District Court. He may not challenge the statute's constitutionality for the first time on appeal. *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17.

¶17 Silvestrone faults the Justice of the Peace for invalidly issuing the warrant that led to his arrest, incarceration, and damages. He also faults individuals "directed to execute" the warrant and a breakdown in the administrative process of Park County courts. As the County correctly noted, however, the Justice of the Peace's issuance of the bench warrant constituted a judicial act. Section 3-10-401, MCA. The execution of the warrant likewise represents the judicial power of the state put into action. *Reisdorff* , ¶¶ 29-30.

¶18 The District Court's grant of Silvestrone's motion to withdraw his guilty plea and its remand of the case to the Justice Court for a trial also constituted judicial acts. Section 46-20-703, MCA. The failure of the Park County courts and personnel to remand the matter to the Justice Court constitutes an omission as opposed to an affirmative judicial act. Section 2-9-112(1), MCA, provides the government with immunity, however, for both acts and omissions of the judiciary. The Justice Court's lack of awareness of the District Court's remand resulted in the inaction of the judicial power of the state.

¶19 We do not condone the acts and omissions leading to Silvestrone's arrest. The judicial officers and employees of the judicial branch must use great care in the exercise of their duties in light of the potential for disruption to the lives of citizens affected by their actions. We do not doubt that Silvestrone's arrest may have caused considerable disruption to him. The acts and omissions leading to his arrest, however, fall within the immunity afforded to the County under § 2-9-112(1), MCA. We conclude that the District Court correctly determined that the County was entitled to judgment as a matter of law under these uncontested facts.

¶20 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶21 I dissent.

¶22 The Court's Opinion understates the egregiousness of the facts surrounding Silvestrone's mistreatment at the hands of the Park County criminal justice system. In his May 23, 2002 Motion to Withdraw Guilty Plea, Silvestrone states as follows. At the time he was charged with partner or family member assault (May 17, 2002), he and the alleged victim were involved in a divorce and the victim used the charge in an attempt to obtain leverage in the divorce case. He was immediately incarcerated for three days without the

8

medication prescribed by his physician. He had never been arrested before and had no knowledge of the workings of the criminal justice system. He was emotional and psychologically distraught, and his ability to make appropriate decisions about his situation was compromised. He did not have the opportunity to obtain the advice of legal counsel. He was under the impression that unless he pleaded guilty, he would be returned to custody and would be unable to make bail. Accordingly, on May 20, 2002, without the benefit of counsel, he pleaded guilty to the charge, whereupon he was released.

¶23 On obtaining counsel prior to sentencing, Silvestrone moved to withdraw his guilty plea, but the Justice of the Peace denied his motion. Fortunately, the District Court granted him relief and remanded the case back to Justice Court for a jury trial. However, that very same day, apparently oblivious of the District Court's order of remand, the Justice of the Peace—"improvidently," as the County admitted in the District Court—issued a bench warrant for Silvestrone's arrest.

¶24 There then occurred a series of events that would confound any responsible citizen—and should embarrass the judge and court officers involved. In a quintessential display of the right hand not knowing what the left hand is doing, Silvestrone's case fell through the cracks. Instead of promptly giving him his day in court as the District Judge had ordered—and as Article II, Section 24 of the Montana Constitution requires—the Justice Court, the prosecutor, and the authorities did nothing for two years. Yet, though lost in the bowels of the court bureaucracy, Silvestrone's case was not entirely forgotten.

¶25 On December 14, 2004, as he was about to board a plane to travel to a job assignment, the authorities arrested Silvestrone and hauled him off to jail. It was only then—after

9

thoroughly trashing his constitutional right to a speedy public trial as ordered by the District Court—that the County filed its motion to dismiss the charge in the "Interests of Justice." The Justice Court granted the prosecutor's motion. While that summarily disposed of his case, Silvestrone never got his day in court; never had the opportunity to have a jury of his peers determine his guilt or innocence; never got the chance to face his accuser and to challenge the assault charge, the mere filing of which presumably still besmirches his record; and was deprived of the chance to clear his name. In short, he was never given the opportunity to exercise any of the fundamental constitutional rights that are, in theory, accorded to every person accused of a crime in this State. Indeed, that the charges against him were ultimately dismissed in the "Interests of Justice" is a deception—a façade covering up the gross *injustice* perpetrated by the Justice Court's and the prosecutor's bungled handling of Silvestrone's case.

¶26 As a result of this debacle, Silvestrone, not surprisingly, sought redress for his mistreatment at the hands of his elected officials and his government. Having received no justice in the criminal justice system, he sued the County in tort for compensation for his ill-treatment. Regrettably, he then hit the brick wall of the civil justice system. The County, the Justice of the Peace, the court officers, the prosecutor—every entity and person involved in this fiasco—was adjudged to be immune from suit. Nobody could be held to account for Silvestrone's injuries. Indeed, "justice" did not have any interest in Silvestrone's plight.

¶27 Judicial immunity, quasi-judicial immunity, and prosecutorial immunity are holdovers from the common law. They are, as well, an affront to the notion of individual accountability that is fundamental to our society.

10

> "Accountability of each individual for individual conduct lies at the core of all law—indeed, of all organized societies. The trend to eliminate or modify sovereign immunity is not an unrelated development; we have moved away from 'The King can do no wrong.' This principle of individual accountability is fundamental if the structure of an organized society is not to be eroded to anarchy and impotence, and it remains essential in civil as well as criminal justice."

*Nixon v. Fitzgerald*, 457 U.S. 731, 768-69, 102 S. Ct. 2690, 2711 (1982) (White, Brennan, Marshall & Blackmun, JJ., dissenting) (quoting *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 429, 101 S. Ct. 1836, 1851 (1981) (Burger, C.J. & Rehnquist, J., dissenting)).

¶28 Recognizing this fact, the framers of Montana's Constitution believed that the government, at least, should be liable for the wrongs perpetrated by its servants. *See* Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, p. 1760. As Delegate Wade J. Dahood, Chairman of the Bill of Rights Committee, explained:

> What our committee is really concerned about is making sure that an antiquated doctrine that had no place within American jurisprudence in the first instance is removed from the face of justice in the State of Montana. . . . We have an opportunity now, as long as in Montana no one else will accept it, to make sure that we have full redress and full justice for all of our citizens. . . . We submit it's an inalienable right to have remedy when someone injures you through negligence and through a wrongdoing, regardless of whether he has the status of a governmental servant or not.

Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, pp. 1763-64.

¶29 Placed within the Declaration of Rights, Article II, Section 18 of the Montana Constitution provides:

> **State subject to suit.** The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

11

¶30 Not surprisingly, it did not take the Legislature long to revert to the archaic doctrine that " 'the king can do whatever he wants but he doesn't have to pay for it.' " *See Massee v. Thompson*, 2004 MT 121, ¶ 72, 321 Mont. 210, ¶ 72, 90 P.3d 394, ¶ 72 (Nelson, J., specially concurring and dissenting) (quoting Delegate Marshall Murray, Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, p. 1760). In the years following the adoption of Montana's 1972 Constitution, the Legislature enacted various statutory roadblocks to frustrate the constitutional right of Montanans to hold the King accountable for his wrongdoing and obtain full legal redress. *See generally* Title 2, Chapter 9, MCA.

¶31 Section 2-9-112, MCA, which provides blanket immunity from suit to the government and the judiciary for official wrongdoing, is such a statute. While it is tempting to address the constitutionality of this statute head-on, any conclusion in favor of Silvestrone's constitutional right to sue at least the King, if not the King's underlings, would be inapposite given the procedural problems underlying this appeal, as set out in the Court's Opinion. Suffice it to say that reading Article II, Sections 16 and 18 together requires a quid pro quo: If the King's underlings are statutorily immune from suit, then the abrogation of sovereign immunity, Mont. Const. art II, § 18, the right of access to the courts, Mont. Const. art II, § 16, and the right to a speedy remedy "for *every* injury of person, property, or character," i.e., the right to "full legal redress," Mont. Const. art II, § 16 (emphasis added), together guarantee the right to sue the King himself—any statute to the contrary notwithstanding. I look forward to the case in which an appropriate constitutional challenge is raised and this argument is developed.

¶32 As for the case at bar, our civil justice system has refused to provide an opportunity for full legal redress to a citizen whose rights have been flagrantly trampled on and to hold those responsible for that abuse accountable. I must therefore dissent from the Court's decision—in the "Interests of Justice."

/S/ JAMES C. NELSON