No. 05-020

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 232

DAVID HARDY, individually, and as member/
owner of DOCHARDY.COM, LLC,

        Plaintiffs and Appellants,

    v.

VISION SERVICE PLAN, a California corporation,

        Defendant and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDV-2003-285,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Joe Seifert, Keller, Reynolds, Drake, Johnson and Gillespie, Helena, Montana

        For Respondent:

            Raoul A. Renaud, Senior Counsel, Vision Service Plan, Rancho Cordova, California

            Mark D. Meyer, Ugrin, Alexander, Zadick & Ugrin, Great Falls, Montana

        Submitted on Briefs:  July 13, 2005

        Decided:  September 14, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellant David Hardy (Hardy) appeals from an order entered by the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Respondent Vision Service Plan (VSP) on Hardy's claims of breach of contract based on the implied covenant of good faith and fair dealing and tortious interference with business relations. We affirm.

¶2 We must determine whether the District Court properly granted VSP's motion for summary judgment after concluding that VSP had not breached its contract with Hardy and had not caused tortious interference with his business relations.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Hardy is a licensed optometrist practicing in Helena, Montana. VSP is a California nonprofit corporation that contracts with optometrists to provide prepaid vision care services to groups and other beneficiaries of VSP plans.

¶4 Hardy enrolled as a VSP member in February 2000 when he signed a two-year "Member Doctor Agreement" (VSP Agreement). The two-year VSP Agreement provided for automatic renewal of his member status for successive terms of one year, unless terminated by either party pursuant to its terms. Either party could terminate the relationship under the terms of the VSP Agreement by giving 90 days written notice prior to cessation, and VSP could terminate the agreement immediately if Hardy failed to comply with VSP's policies, rules, and procedures. VSP agreed to provide Hardy written notice of the reasons for any adverse decision resulting in a change of his membership status. The VSP Agreement also required that Hardy maintain majority ownership and complete control of

2

all aspects of his practice, including his dispensary.

¶5     Unbeknownst to VSP, Hardy previously had entered into a franchise agreement with Pearle Vision, Inc. (Pearle) in December 1999.  The Pearle franchise agreement required Hardy to "operate the Franchise Business in a manner that strictly adheres to [Pearle's] standards and policies," including operating under prescribed hours; exclusively offering Pearle-approved optical products; using designated Pearle promotional materials such as fixtures, equipment and signs; paying Pearle 7% in royalties and 9% for advertising; restricting any association with other optical businesses; and, when permitted by law, following Pearle's procedures for the practice of optometry.

¶6     VSP learned of Hardy's Pearle franchise agreement in 2002.  VSP determined that Hardy's Pearle franchise agreement contravened certain provisions of its VSP Agreement and proceeded to terminate his membership.  VSP specifically stated that Hardy no longer met the criteria established for VSP membership in that "[o]wnership and control of a Member Doctor's practice, including dispensary, is essential for VSP membership," and that a member "shall have majority ownership and complete control of all aspects of his practice including dispensary."

¶7     Hardy appealed VSP's decision to terminate his member agreement through VSP's corporate administrative review process.  VSP conducted two separate hearings during which Hardy attempted to demonstrate that his Pearle franchise agreement failed to cede any aspect of control over his practice to Pearle.  Both VSP hearing panels, comprised of VSP corporate officers and private optometrists, upheld the decision to terminate his agreement.

¶8     Hardy filed this action on May 14, 2003, alleging breach of contract based upon the

3

implied covenant of good faith and fair dealing and tortious interference with business relations arising from the termination of the VSP Agreement. VSP moved for summary judgment contending that Hardy remained unable, as a matter of law, to establish either claim.

¶9 The District Court held a hearing and granted summary judgment to VSP on the grounds that Hardy did not have a justifiable expectation of a continued contractual relationship with VSP as evidenced by the fact that either party could terminate the VSP Agreement by giving the other party at least 90 days prior written notice. The court further determined that Hardy's Pearle franchise agreement violated his VSP Agreement and therefore he reasonably could not expect to continue working under the VSP Agreement's terms. The court also rejected Hardy's tortious interference claim on the grounds that VSP had not terminated the VSP Agreement without justifiable cause. The court determined that Hardy's decision to enter a franchise agreement with Pearle provided just cause for VSP to terminate the VSP Agreement. This appeal followed.

## STANDARD OF REVIEW

¶10 We review a district court's decision to grant summary judgment *de novo*, based on the same criteria applied by the district court. *Counterpoint, Inc. v. Essex Insurance Company,* 1998 MT 251, ¶ 7, 291 Mont. 189, ¶ 7, 967 P.2d 393, ¶ 7. We must determine whether the court correctly found no genuine issue of material facts existed and whether it applied the law correctly. *Pablo v. Moore*, 2000 MT 48, ¶ 12, 298 Mont. 393, ¶ 12, 995 P.2d 460, ¶ 12.

## DISCUSSION

4

¶11    Hardy argues that the District Court incorrectly resolved a factual dispute on summary judgment regarding his justifiable expectations over the continued contractual relationship with VSP. VSP claims that either party could cancel the agreement *without cause* on 90 days prior written notice. Hardy maintains, however, that he expected the agreement to renew automatically for successive terms of one year unless terminated by either party *for cause*. Hardy contends that VSP could not terminate his contract without cause and, in fact, had to supply written notice to him enumerating the reasons for any adverse decision resulting in the change of his membership status.

¶12    Indeed, Hardy asserts that VSP's written notice failed to assert that he was being terminated without cause, but instead cited his alleged failure to maintain complete ownership and control of all aspects of his practice as grounds for the termination. Hardy argues he should have an opportunity to prove that the cause stated for his termination by VSP remains false. In substance, then, Hardy alleges that VSP misrepresented–and the District Court erroneously accepted–its reasons for terminating the agreement in its motion for summary judgment.

¶13    Every contract contains a covenant of good faith and fair dealing. *Story v. City of Bozeman* (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. A breach of the covenant constitutes a breach of the contract. *Story*, 242 Mont. at 450, 791 P.2d at 775. The implied covenant of good faith and fair dealing requires honesty in fact and observance of reasonable commercial standards of fair dealing in the trade. Section 28-1-211, MCA. We measure the nature and extent of the obligations of good faith and fair dealing by the parties' justifiable expectations. *Talley v. Flathead Valley Community College* (1993), 259 Mont. 479, 489,

857 P.2d 701, 707.

¶14    In *Farris v. Hutchinson* (1992), 254 Mont. 334, 838 P.2d 374, we considered on a motion to dismiss whether an employer breached the covenant of good faith and fair dealing where it failed to renew an employee's one-year employment contract pursuant to a non-renewal provision in the agreement.  We held that the employee could prove no set of facts in support of her implied covenant claim where the employer had terminated the employee, without cause, under an express provision of the contract.  *Farris*, 254 Mont. at 339-40, 838 P.2d at 377.  We also cited to our decision in *Prout v. Sears, Robuck and Company* (1989), 236 Mont. 152, 772 P.2d 288, where we allowed prospectively an employer to terminate an employee without cause under the terms of the agreement, but noted that if a termination had been for cause, the employee must have an opportunity to prove that the stated cause was false.  *Farris*, 254 Mont. at 339, 838 P.2d at 377.  We concluded, however, that the eventual determination of any factual issues regarding cause did not and would not contradict the express wording of the agreement where the employer gave no stated cause for the termination pursuant to an express contractual provision.  *Farris*, 254 Mont. at 339, 838 P.2d at 377.

¶15    Here the District Court correctly determined that Hardy did not have a justifiable expectation of a continued contractual relationship with VSP as evidenced by the fact that either party could terminate the VSP Agreement by giving the other party at least 90 days prior written notice.  The terms of the VSP Agreement permitted either party to conclude the affiliation for any reason or VSP could terminate the contract if Hardy breached its policies, rules, or procedures.

6

¶16 We interpret the language of contractual provisions according to their plain, ordinary meaning, *Schwend v. Schwend*, 1999 MT 194, ¶ 39, 295 Mont. 384, ¶ 39, 983 P.2d 988, ¶ 39, and under these express terms it remains difficult to imagine any contracting party maintaining a justifiable expectation of an indefinitely continuing contractual relationship. The covenant of good faith cannot be read to prohibit a party from doing that which the agreement expressly permits. *Farris*, 254 Mont. at 339, 838 P.2d at 377.

¶17 The VSP Agreement at issue here remains, as a matter of law, unambiguous. We apply the contract language as written when it remains unambiguous and not subject to two different interpretations. *Carelli v. Hall* (1996), 279 Mont. 202, 209, 926 P.2d 756, 761. We need look no further than the contract language to conclude that Hardy's actions in entering into the franchise agreement with Pearle contravened VSP's explicit dominion conditions where the Pearle franchise agreement required him to cede control over aspects of his practice. Hardy reasonably cannot expect the VSP Agreement to continue when he failed to comply with a condition of membership. No facts exist that suggest VSP terminated Hardy for any reason other than his failure to comply with the Agreement's condition. As such, we conclude that Hardy cannot maintain any justifiable expectations regarding his continued contractual relationship with VSP. *Talley*, 259 Mont. at 489, 857 P.2d at 707.

¶18 Hardy also argues that the District Court incorrectly determined that VSP retained justifiable cause to terminate the Agreement and therefore did not tortiously interfere with business relations when it discontinued Hardy's membership. In order to establish a *prima facie* case of tortious interference with contractual or business relations, the plaintiff must

7

establish the defendant's acts: 1) were intentional and willful; 2) were calculated to cause damage to the plaintiff in his or her business; 3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and 4) that actual damages and loss resulted. *Grenfell v. Anderson*, 2002 MT 225, ¶ 64, 311 Mont. 385, ¶ 64, 56 P.3d 326, ¶ 64.

¶19     Hardy contends that the court erroneously concluded that he had violated a condition of the Agreement requiring that he maintain complete control over all aspects of his practice. Hardy maintains that the contract term "control" does not necessarily encompass the "right to control" and asserts that Pearle did not enforce the conditions of the franchise agreement. Hardy argues that promoting the economic interests of independent practitioners associated exclusively with VSP provided the real reason for terminating his agreement and not, as VSP suggested, his failure to maintain control over his dispensary. Hardy asserts that VSP intentionally caused damages without justifiable reason when it undertook a campaign to discourage current and prospective patients from patronizing his dispensary.

¶20     We again interpret the language of contractual provisions according to their plain, ordinary meaning. *Schwend*, ¶ 39. The VSP Agreement required that Hardy maintain majority ownership and complete control of all aspects of his practice, including his dispensary. Specifically, the VSP Agreement required that the control of all professional eye care services, including dispensing, remained delegated solely to the VSP member doctor. The Pearle franchise agreement concomitantly required that Hardy strictly adhere to its standards and policies including business methods, promotional and marketing programs and, in certain circumstances, procedures for the practice of optometry.

8

¶21     We again apply the contract language as written when it remains unambiguous and not subject to two different interpretations. *Carelli*, 279 Mont. at 209, 926 P.2d at 761. The VSP Agreement at issue here remains unambiguous as a matter of law considering Hardy's actions in entering into the franchise agreement with Pearle conflicted with the plain language of the VSP Agreement that he retain control of all aspects of his practice. Thus, VSP maintained justifiable cause to terminate its agreement with Hardy when he enrolled as a Pearle franchisee and therefore, Hardy's claim for interference proves unpersuasive. *Grenfell*, ¶ 64.

¶22     The Dissent adopts and promotes Hardy's proposition that VSP terminated his agreement under the guise of the dominion conditions while covertly orchestrating a systematic purge of Pearle franchisees from its ranks in order to protect private optometrists. Dissent, ¶¶ 35-37. VSP's putative subterfuge aside, Hardy's VSP Agreement contained conditions requiring complete control over his practice. Hardy agreed to the conditions and failed to comply, seeking instead the benefits of both a private practice and franchisee label. Hardy brought a breach of contract suit based on the implied covenant of good faith and fair dealing and the decision today rests squarely on legal bedrock. *See Grenfell*, ¶ 64; *Farris*, 254 Mont. at 339, 838 P.2d at 377.

¶23     The Dissent also approves Hardy's contention that VSP willfully harmed his business after terminating the VSP Agreement. Dissent, ¶ 45. A reading of Hardy's complaint, affidavit and briefs, however, fails to illuminate which actions, if any, VSP unlawfully engaged to cause damage to Hardy's business. Indeed, the Dissent also fails to cite to any matter in the record in support of this contention.

9

¶24    We thus conclude that the District Court properly granted VSP's motion for summary judgment after finding that VSP did not breach its contract with Hardy and did not cause tortious interference with his business relations.

¶25    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

Justice James C. Nelson dissents.

¶26    I dissent from the Court's decision.

¶27    First, all of our discussion of VSP's ability to terminate the agreement on 90 days notice without cause--a topic to which VSP also devotes substantial ink in its briefs--is irrelevant. VSP did not terminate Hardy's membership on this basis, but rather, it did so under the provision of the agreement that required good cause. Like VSP's arguments on appeal, the Court's attempt to seamlessly weave the two bases together, one theory supporting the other in a sort of legal symbiosis, simply muddles what is actually at issue here--whether there were genuine issues of material fact which precluded summary judgment on Hardy's claim that he was not in violation of the agreement when his membership was terminated.

¶28    A review of the record reveals that there were genuine issues of material fact on this issue; that Hardy was entitled to have these issues resolved by a jury; and that the District Court's short-circuiting of the trial process and our affirmance of that improperly denies Hardy his day in court.

¶29    Hardy's defense of VSP's summary judgment motion clearly demonstrated the existence of these genuine issues of material fact.

¶30    In granting VSP's motion for summary judgment, the court held:

> Condition E of the Member Doctor Agreement requires Hardy to maintain complete control of his practice. However, Hardy's franchise agreement requires him to surrender control of many aspects of his practice to Pearle Vision.

The court failed to acknowledge Hardy's affidavit which stated:

11

While I conduct business utilizing Pearle Vision advertising and marketing assistance, *I own and fully control my practice and dispensary.* I am strictly required, under my Pearle Vision franchise agreement, to "make it clear that [I am] an independent contractor and not in any way an agent, employee, partner or joint venturer" with Pearle. While my franchise agreement requires me to adhere to standards of quality and good practice, I am solely financially and professionally responsible for my work. Although VSP asserts that Pearle exerts "control" over my practice, it never has *in fact.* Moreover, every optical dispensary which carries national lines of eyewear is subject to restrictions and standards for inventory, marketing and such things as lense fabrication and installation. This certainly includes dispensaries owned by VSP member doctors in good standing. [First emphasis added.]

¶31   In regard to the matter of control, VSP's designated corporate representative, Cheryl Johnson, testified on deposition that the member doctor agreement had been *construed* by VSP's quality assurance committee. Johnson testified:

Q. MR. SEIFERT: Returning now to your Declaration, Exhibit 10, I would like to continue on and ask you some things about that document.
      Paragraph 12, which appears on page 6 at the top of page 6, towards the end of that paragraph it recites, "In 1993, the Quality Assurance Committee of the Board passed a motion noting that 'VSP's use of the language 'control and ownership' are synonymous.'"
      What does that mean?

A. It means that the language control and ownership mean the same thing.

Q. So if you own, you control?

A. For this purpose.

Q. And by "this purpose" what do you mean?

A. Our Member Doctor Agreement and our office standards.

¶32    While the District Court, and our Opinion, conclude that Hardy "ceded" aspects of control of his practice to Pearle under his franchise agreement, Johnson's testimony established compliance with the "control" requirement.  It was uncontradicted that Hardy owned his own practice and, thus, under VSP's own criteria, also controlled it.

¶33    Johnson also testified that the "complete control" defined by VSP's Motion for Summary Judgment exists nowhere, in fact, in VSP's member network.  She testified that VSP member doctors are required to purchase and market VSP's own line of Altair eyewear.  Thus, if VSP regards Pearle's marketing standards as "control" it must itself agree that every VSP doctor required to sell Altair eyewear also lacks "complete control" and, thereby, are in violation of the VSP franchise agreement, Condition E.

¶34    Furthermore, Johnson admitted in her deposition that other VSP franchisees carry lines of merchandise or eyewear that are accompanied by restrictions on the method and manner in which they are advertised, displayed and marketed.  Johnson's deposition reveals that while she tried to avoid the issue every way possible, VSP's concept of "complete control" depends totally upon who VSP wants to apply the requirement against and under what circumstances.

¶35    Finally, in defense against VSP's Motion for Summary Judgment, Hardy demonstrated that hundreds of other Pearle and so called "chain" providers were allowed to retain VSP membership when he was not; that he did not violate Condition E; that there was insufficient evidence supporting VSP's claim that Condition E was to protect against "suspect" quality of care provided by "chains;" that VSP has never before terminated the panel membership of a doctor on grounds that it could do so "without cause" or "for any

13

reason;" and that while VSP's claim that Hardy lacked "control" over his practice, referring to "suspect" standards of care and violation of Condition E, VSP's real motive was to serve the economic, competitive interests of its so called "independent practitioners" by excluding "chain" doctors from its dominate national network. Indeed, VSP's company periodicals demonstrated management's concern over loss of "market share" to "chains" and that Condition E was really created to "competitively assist" its "private" member doctors.

¶36    In this latter regard, Johnson testified on deposition:

Q. MR. SEIFERT: Is another motivation of VSP for utilizing Condition E to competitively assist its independent providers?

A. I don't know that I would use the word competitively assist, but given that is the network that VSP has and we are promoting that network, that's the purpose.

Q. Would it be accurate to say that one of its purposes, and by it I am referring to Condition E, is to facilitate the economic or business success of its independent providers?

A. Yes.

¶37    Hardy demonstrated that VSP knowingly allows, under various pretexts, approximately 235 "chain" doctors to be VSP members. Notwithstanding, in Hardy's case, VSP eliminated his membership because he lacked "complete control" over his practice.

¶38    At ¶ 14 of our Opinion, the Court cites *Farris v. Hutchinson* (1992), 254 Mont. 334, 838 P.2d 374, conceding, as it must, that where the employer terminates an employee for cause, the employee must have an opportunity to prove that the stated cause was false. Indeed, we relied upon *Stark v. Circle K Corp.* (1988), 230 Mont. 468, 751 P.2d 162, and *Prout v. Sears, Roebuck and Co.* (1989), 236 Mont. 152, 772 P.2d 288, noting that in both

cases the discharges were for cause and that it was, therefore, for the jury to decide the factual issue of whether the stated reasons were true or not. *Farris*, 254 Mont. at 339, 838 P.2d at 377. That is precisely the situation presented here. The termination of Hardy's membership was for cause stated--his lack of control over his practice. VSP's and our attempts to muddy the water to the contrary, Hardy was not discharged under the without-cause provisions of the membership agreement.

¶39 Hardy put more than sufficient evidence before the court in his defense against VSP's Motion for Summary Judgment to establish that there are genuine issues of material fact as to the real reason why VSP terminated his membership for cause. It is up to the jury, not the trial court, nor this Court on appeal, to adjudicate the validity of those reasons or to determine questions of good faith at issue in this cause. Those are questions for the jury.

¶40 Our decision here ignores *Farris*, *Stark* and *Prout* and denies Hardy his rightful day in court.

¶41 I would reverse the District Court's Order granting VSP's Motion for Summary Judgment and would remand for trial.

¶42 I dissent from our failure to do so.

/S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the dissent of Justice James C. Nelson.


/S/ PATRICIA O. COTTER


Justice Patricia O. Cotter dissents.

15

¶43 I join in Justice Nelson's dissent. I also offer the following additional grounds for disagreement with the Court's Opinion.

¶44 I disagree with the Court's conclusion that Hardy's claim for interference with contract fails. For the same reasons set forth in Justice Nelson's dissent, the question of whether VSP interfered with Hardy's contracts with his patients with the intent and calculation to cause him damage is a question of fact.

¶45 The Court fails to acknowledge Hardy's contention that, after VSP terminated his contract, it proceeded to advise his patients that they should discontinue seeing him, and see instead a VSP-member competitor. According to Hardy, VSP also refused to disclose to Hardy or his staff how those who might wish to continue as Hardy's patients could continue to receive VSP benefits. As a result, Hardy claims damages from lost business in the millions. Such a claim, if proven, would demonstrate interference with business relations that post-dates and is arguably severable from the breach of contract claim. This being so, the interference with business relations claim does not depend for its existence on the viability of the breach of contract claim. The District Court erred in tying the two claims together, and this Court has, in my judgment, perpetuated that error. For this reason, I would reverse the entry of summary judgment on the claim for interference with business relations, in addition to reversing the entry of summary judgment on the breach of contract claim. I dissent from our refusal to do so.

/S/ PATRICIA O. COTTER

16