No. 05-446

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 130

SHELLEY GERMANN,

      Plaintiff and Appellant,

    v.

GARY STEPHENS, DON NELSON, SHIRLEY
JACOBSON, and JAN METZMAKER, in their
official and individual capacities as Council Members
of the City of Whitefish, THE CITY COUNCIL OF
WHITEFISH, and THE CITY OF WHITEFISH,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead, Cause No. DV 00-022A
                The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Taryn S. Hart, Richard F. Gallagher, Church, Harris, Johnson & Williams,
            P.C., Missoula, Montana

      For Respondents Stephens, Nelson, Jacobson and Metzmaker:

            Angela K. Jacobs, Hammer, Hewitt & Jacobs, PLLC, Kalispell, Montana

      For Respondent City of Whitefish:

            James M. Ramlow and Shelly F. Brander, Kaufman, Vidal, Hileman &
            Ramlow, P.C., Kalispell, Montana

                          Submitted on Briefs:  March 8, 2006
                                 Decided: June 13, 2006

Filed:

                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     The City of Whitefish (City) enacted a temporary zoning ordinance in 1999 and a permanent zoning ordinance in 2000 that required business owners to obtain conditional use permits in order to operate new establishments that serve alcohol or permit gambling. The City denied Shelley Germann's (Germann) applications for conditional use permits. Germann appeals from an order of the Eleventh Judicial District, Flathead County, granting summary judgment in favor of the City, the City Council of Whitefish (Council), and Gary Stephens, Don Nelson, Shirley Jacobson, and Jan Metzmaker (Council Members), in their official and individual capacities as Council Members. Germann further appeals from the District Court's decision to grant attorney fees to the Council Members under 42 U.S.C. § 1988 and its denial of her motion for costs incurred in preparation for a settlement conference. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶2     Germann's appeal presents the following issues:

¶3     1.  Whether the District Court properly granted summary judgment to the City on Germann's state and federal claims.

¶4     2.  Whether the District Court properly granted summary judgment to the Council Members on Germann's state and federal claims.

¶5     3.  Whether the District Court abused its discretion in awarding attorneys' fees to the Council Members under 42 U.S.C. § 1988.

¶6     4.  Whether the District Court abused its discretion by denying Germann's motion for costs incurred in preparation for a mandatory settlement conference.

## FACTUAL BACKGROUND

¶7 Germann owned the Downtowner Motel located at 224 Spokane Avenue in Whitefish from 1995 until 2002. Local zoning ordinances in effect before June of 1999 designated the Downtowner's property as WB-3. The zoning ordinances allowed for bars and casinos on property zoned WB-3. The Downtowner sits directly across the intersection of Spokane Avenue and Second Street from the Whitefish Central School. The School's primary entrance sits on Spokane Avenue and lies approximately 420 feet from the entrance to the Downtowner. The School's mailing address is 600 East Second Street.

¶8 Germann applied with the Department of Revenue (DOR) for approval to transfer an on-premises liquor license for operation at the Downtowner in August of 1998. Germann also applied for a gambling operator's license in September of 1998. DOR mailed a notice of the proposed liquor license transfer to various City officials, including the City Attorney and Virgil Bench, the City Building Inspector. The notice requested that City officials inform DOR by February 27, 1999, whether the application satisfied all of the local laws and ordinances that the respective officials were responsible for regulating. DOR also published two separate notices of Germann's application in the Whitefish Pilot newspaper.

¶9 Bench received phone calls from several concerned citizens regarding Germann's intent to operate a bar and casino at the Downtowner. Bench telephoned DOR in response and notified it that the Downtowner was within 400 feet of Central School and Foursquare Church. Bench also sent two letters to DOR noting that the Downtowner was

3

within 600 feet of a school and a church. Bench expressed his view that the Downtowner's proximity to the school and the church precluded operation of a bar and casino under State liquor licensing laws.

¶10 Section 16-3-306, MCA, prohibits DOR from granting retail liquor licenses to establishments located "within 600 feet of and on the same street as a building used exclusively as a church . . . or as a school . . . ." The statute further provides that the distance shall be measured in a straight line from the center of the nearest entrances of each establishment. Section 16-3-306, MCA. DOR's administrative rules restrict the application of § 16-3-306, MCA, however, only to those instances in which the business mailing addresses of each establishment are on the same street. Rule 42.12.129(1)(b), ARM.

¶11 The City issued Germann a building permit in April of 1999 that allowed Germann to change the Downtowner from Group B occupancy to Group A occupancy. Group A occupancy allows for uses such as bars and casinos. The City lacked any authority, however, to permit Germann to open a bar or casino, as the State of Montana exclusively regulates the operation of bars and casinos. See Title 16, Chapter 3, Montana Code Annotated (Control of Liquor, Beer, and Wine); Title 23, Chapter 5, Montana Code Annotated (Gambling).

¶12 City officials became concerned that DOR's interpretation of § 16-3-306, MCA, would allow Germann to operate a bar and casino despite its close proximity to the Central School. The City was further concerned that other bars and casinos might be proposed, particularly in light of its inability to control the opening of such

4

establishments. The City thereafter enacted emergency Ordinance 99-8 (Emergency Ordinance) on June 7, 1999, as a temporary ordinance that prohibited "any new establishments [from] attempting to sell on-premises alcoholic beverages, beer and/or wine or attempting to permit or operate gambling or gaming" within the City unless such establishments received a conditional use permit from the Council.

¶13 DOR had not approved Germann's application for a liquor license at the time the Emergency Ordinance took effect. Section 23-5-119, MCA, provides that applicants for a gambling license must possess a valid liquor license as a prerequisite to obtaining a gambling license. The Montana Gambling Control Division (MGCD) earlier had filed a disciplinary action against Germann for making false representations on her gambling license application. Germann had yet to resolve this disciplinary action with MGCD at the time the City passed the Emergency Ordinance. In fact, neither DOR nor MGCD had ruled on Germann's applications by the time that she sold the Downtowner in 2002.

¶14 Germann applied for a conditional use permit to operate her property as a bar and casino on September 27, 1999. The Flathead Regional Development Office (FRDO) prepared a staff report evaluating Germann's application. FRDO's report noted that the Downtowner sat on the edge of a residential neighborhood near the Central School, residences, and a church. The report recommended denial of Germann's application. FRDO presented the report to the city-county planning board and the board likewise recommended denial. FRDO then presented the report to the Council on December 20, 1999. Members of the public spoke at the Council meeting and voiced their concerns about the Downtowner's proximity to the church and to the Central School. The Council

adopted FRDO's report as findings of fact and denied Germann's application.

¶15 The Council enacted a permanent zoning ordinance (Ordinance 00-06) on April 3, 2000, that precluded casinos on property zoned WB-3, such as the Downtowner. Ordinance 00-06 still allowed bars on WB-3 property if an applicant received a conditional use permit from the Council. Germann applied for a conditional use permit to operate the Downtowner as a bar in April of 2002. Germann still had not received a liquor license from DOR. FRDO reviewed the application and recommended it be denied based on the Downtowner's proximity to the Central School, churches, and residential neighborhoods. FRDO noted that the Downtowner's parking lot was a mere 100 feet from the school. The Council considered Germann's application in June of 2002. Several members of the public again voiced their opposition to the establishment of a bar near the Central School. The Council denied Germann's application.

## PROCEDURAL BACKGROUND

¶16 Germann filed an action against the City, alleging various state and federal claims for damages allegedly suffered as a result of the City's enactment of the Emergency Ordinance and Ordinance 00-06, and from its denial of her applications for conditional use permits. Count two of Germann's complaint requested a declaratory judgment that the Emergency Ordinance was void and unenforceable. Germann moved for partial summary judgment on this count. The City filed a cross motion for summary judgment. The District Court granted the City's motion after determining that the Emergency Ordinance was valid and enforceable. Germann did not appeal the District Court's ruling.

6

¶17 Germann filed a motion for leave to file a second amended complaint. The District Court granted Germann's motion subject to several conditions. Notably, the District Court refused to allow Germann to repeat allegations that the Emergency Ordinance was void and unenforceable, as it already had disposed of that issue on summary judgment. Germann's amended complaint still contained allegations that the Emergency Ordinance was void and unenforceable despite the District Court's admonition. Germann's second amended complaint also included state and federal claims against the City, Council, and the Council Members in their individual and official capacities, including claims under 42 U.S.C. § 1983 (§ 1983).

¶18 The District Court's Rule 16 Scheduling Order required a settlement conference between the parties. The City and Germann scheduled a conference for December 7, 2004, in Kalispell. The City requested postponement of the conference by two weeks to secure more settlement authority for its representative. The parties attended the conference on December 21, 2004, but the City declined to make a settlement offer.

¶19 The Council Members moved for summary judgment on Germann's individual and official capacity claims. The District Court granted their motion, reasoning that § 2-9-305(5), MCA, and our decision in *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, 312 Mont. 52, 57 P.3d 836, provided the Council Members with immunity for Germann's state and federal individual capacity claims. The District Court further granted summary judgment to the Council Members on Germann's official capacity claims. The court reasoned that the official capacity claims were redundant of Germann's claims against the City. The District Court awarded the Council Members

7

attorneys' fees pursuant to 42 U.S.C. § 1988 (§ 1988) after determining that Germann's claims against the Council Members were unreasonable.

¶20 The City also moved for summary judgment on the grounds that its actions did not deprive Germann of the legal use of her property. The City argued that § 16-3-306, MCA, prohibited DOR from licensing Germann's property as a bar because of the Downtowner's proximity to Central School. The City noted that Germann would be unable to obtain a gaming license without first acquiring a liquor license. The District Court agreed and granted the City's motion for summary judgment, ruling that DOR exceeded its statutory authority in its interpretation of § 16-3-306(1), MCA. The District Court determined that the proper interpretation of § 16-3-306(1), MCA, did not require establishments to have business mailing addresses on the same street. Because the Downtowner was within 600 feet of a school located on the same street, the District Court held that § 16-3-306(1), MCA, precluded all claims against the City. The District Court further concluded that Germann was not entitled to settlement costs incurred in preparation for the court mandated settlement conference. This appeal followed.

**STANDARD OF REVIEW**

¶21 We review a district court's decision to grant summary judgment *de novo*, based on the same criteria applied by the district court. *Hardy v. Vision Service Plan*, 2005 MT 232, ¶ 10, 328 Mont. 385, ¶ 10, 120 P.3d 402, ¶ 10. We must determine whether the district court applied the law correctly. *Hardy*, ¶ 10. If we reach the same conclusion as the district court, but on different grounds, we may nonetheless affirm the district court's judgment. *Safeco Ins. Co. of America v. Liss*, 2000 MT 380, ¶ 25, 303 Mont. 519, ¶ 25,

8

16 P.3d 399, ¶ 25.

¶22　We review a district court's award of attorneys' fees under § 1988 for an abuse of discretion. *Ihler v. Chisholm*, 2000 MT 37, ¶ 24, 298 Mont. 254, ¶ 24, 995 P.2d 439, ¶ 24. A district court abuses its discretion if it bases its fee award upon an inaccurate view of the law or a clearly erroneous finding of fact. *Ihler*, ¶ 24.

¶23　We review a district court's decision to award or deny sanctions for failure to comply with a Rule 16 Scheduling Order for an abuse of discretion. *See Seal v. Woodrows Pharmacy*, 1999 MT 247, ¶ 26, 296 Mont. 197, ¶ 26, 988 P.2d 1230, ¶ 26. We afford the district court discretion because it sits in the best position to evaluate whether one party has disregarded the rights of the opposing party and what sanctions for such conduct, if any, addresses most appropriately the sanctionable conduct. *Seal*, ¶ 26.

## DISCUSSION

¶24　1. *Whether the District Court properly granted summary judgment to the City on Germann's state and federal claims.*

¶25　Germann argues that the District Court improperly granted summary judgment in favor of the City. She brought state claims and federal § 1983 claims against the City for its actions in passing the Emergency Ordinance, Ordinance 00-06, and in denying her applications for conditional use permits. Specifically, Germann brought a takings claim under Article II, Section 29, of the Montana Constitution and the 5th and 14th Amendments to the U.S. Constitution, substantive and procedural due process claims under Article II, Section 17, of the Montana Constitution and the 5th and 14th Amendments to the U.S. Constitution, and an equal protection claim under Article II,

Section 4, of the Montana Constitution and the 14th Amendment to the U.S. Constitution. Germann maintains that the court misinterpreted § 16-3-306(1), MCA, in holding that it precluded all of her claims against the City.

¶26    A plaintiff first must establish that it possesses a protected liberty or property interest to establish a viable § 1983 claim because the guarantees of the 5th and 14th amendments apply only when a constitutionally protected liberty or property interest is at stake. *Kiely*, ¶ 23. To have a property interest in a benefit, a plaintiff clearly must have more than an abstract need or desire for it. Rather, it must have a legitimate claim of entitlement to it. *ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 193, 903 P.2d 170, 175.

¶27    Federal due process and takings claims require a plaintiff first to demonstrate that it possesses a constitutionally protected property interest. *Kiely*, ¶ 23; *Gammoh v. City of La Habra* (9th Cir. 2005), 395 F.3d 1114, 1122. State due process and takings claims likewise require the plaintiff to first establish that it has a property interest. *Montana Media, Inc. v. Flathead County*, 2003 MT 23, ¶ 65, 314 Mont. 121, ¶ 65, 63 P.3d 1129, ¶ 65 (due process); *Seven Up Pete Venture v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, ¶ 26, 114 P.3d 1009, ¶ 26 (takings). Independent sources, such as state law, create property interests. *Seven Up Pete*, ¶ 26.

¶28    When a plaintiff claims a property interest under state law, we determine whether a reasonable expectation of entitlement exists based largely on the language of the statute relied upon and the extent to which the legislature couched the entitlement in mandatory terms. *Kiely*, ¶ 27. Any significant discretion conferred upon a local agency defeats a

10

claim of entitlement. *Kiely*, ¶ 28. Stated another way, a property interest exists only when the legislature has so narrowly circumscribed the issuing agency's discretion that it virtually assures the interest's approval. *Kiely*, ¶ 28.

¶29 Section 16-4-401, MCA, outlines the necessary criteria for obtaining a liquor license in Montana. That section states that a "license under this code is a privilege that the state may grant to an applicant and is not a right to which any applicant is entitled." Section 16-4-401(1), MCA. The statutory scheme provides broad discretion to DOR to determine whether an applicant qualifies for a liquor license. For example, § 16-4-405(3)(a), MCA, provides that DOR may not issue a license if it determines that the welfare of the people residing in the vicinity of the premises would be adversely or seriously affected by issuance of the license. An applicant for a gambling license to operate card games, sports pools, or video gaming must possess a valid liquor license to be eligible to offer gaming. Section 23-5-119, MCA.

¶30 Germann's state and federal due process and takings claims thus turn on the deprivation of her asserted protected interest to operate a bar and casino at the Downtowner. Germann relies on the zoning ordinances in effect before the enactment of the Emergency Ordinance and Ordinance 00-06 for her assertion that the City's actions deprived her of her right to operate a bar and casino at the Downtowner. The zoning laws in place before the enactment of the Ordinances allowed for bars and casinos on property zoned WB-3. The zoning ordinances could not, however, affirmatively authorize her to operate a bar or casino. Only DOR and MGCD possessed the authority to approve Germann's request to open a bar and casino. See Title 16, Chapter 3, Montana Code

11

Annotated (Control of Liquor, Beer, and Wine); Title 23, Chapter 5, Montana Code Annotated (Gambling).

¶31 Germann had yet to obtain a liquor license from DOR at the time the City passed the Ordinances and denied her applications for conditional use permits. She therefore did not have a property interest in operating the Downtowner as a bar. Moreover, Germann cannot assert that she ultimately was entitled to a liquor license. The statutory scheme explicitly states that receipt of a liquor license is not a right, but a privilege. Section 16-4-401(1), MCA. The legislature vested DOR with discretion when determining whether an applicant qualifies for a liquor license. Germann accordingly did not enjoy an entitlement to a liquor license. *Kiely*, ¶ 28.

¶32 The mere fact that Germann had applied for a liquor license at the time that the City had enacted the Ordinances did not guarantee she would receive such an entitlement. We rejected a similar claim in *Seven Up Pete* where a mining company in possession of a State mineral lease argued that its application for a mining permit provided it with a protected property interest. *Seven Up Pete*, ¶ 22. We held that a voter-approved initiative enacted while the permit application was pending did not deprive the mining company of a protected property interest in the yet to be obtained mining permit. *Seven Up Pete*, ¶ 33. Further, Germann could not receive a gaming license without first obtaining a liquor license. Section 23-5-119, MCA. The City's actions therefore did not deprive Germann of any vested property right to operate the Downtowner as a bar or as a casino.

¶33 Germann's inability to establish that she possessed a protected property interest in

12

operating her establishment as a bar or casino precludes her from establishing her § 1983 due process and takings claims or her corresponding state claims. *Kiely*, ¶ 23; *Gammoh*, 395 F.3d at 1122; *Montana Media*, ¶ 65*; Seven Up Pete*, ¶ 26. The City therefore did not deprive her of a protected property interest, either in enacting the Ordinances or in denying her conditional use permits. Germann did not appeal the District Court's determination on summary judgment that the Ordinances were valid and enforceable. Our determination that Germann's lack of a protected property interest in operating the Downtowner as a bar or casino precludes all claims against the City dispenses with the need to evaluate whether the District Court properly interpreted § 16-3-306, MCA. If we reach the same conclusion as the district court, but on different grounds, we may nonetheless affirm the district court's ruling. *Safeco Ins.*, ¶ 25. We therefore conclude that the District Court properly granted summary judgment to the City on all of Germann's state and federal claims.

¶34  2. *Whether the District Court properly granted summary judgment to the Council Members on Germann's state and federal law claims.*

¶35  Germann argues that the District Court improperly held that § 2-9-305(5), MCA, immunized the Council Members from Germann's state and federal law claims. Germann's claims against the Council Members suffer from the same defect, however, as her claims against the City. Her claims against the Council Members and the City arise from the same conduct, namely the Council's actions in passing the Ordinances and denying Germann's applications for conditional use permits. Our determination that Germann lacks a protected property interest in operating the Dowtowner as a bar or

casino precludes all claims against the Council Members and dispenses with our need to evaluate whether the Council Members enjoyed immunity from suit. We therefore conclude that the District Court properly granted summary judgment to the Council Members on all of Germann's state and federal claims. *Safeco Ins.,* ¶ 25.

¶36 3. *Whether the District Court abused its discretion in awarding attorneys' fees to the Council Members under 42 U.S.C. § 1988.*

¶37 Courts may award reasonable attorneys' fees to prevailing parties in relation to the prosecution of a federal civil rights claim. 42 U.S.C. § 1988(b). Section 1988 entitles prevailing defendants to attorneys' fees only when a plaintiff's civil rights claim represents a frivolous, unreasonable, or groundless claim, or where the plaintiff continued to litigate after it clearly became so. *Thomas v. City of Tacoma* (9th Cir. 2005), 410 F.3d 644, 647. If a party prevails on a § 1983 claim, they also are entitled to attorneys' fees on pendent state claims where the state and federal causes of action arise from a common nucleus of operative fact. *Mateyko v. Felix* (9th Cir. 1990), 924 F.2d 824, 828.

A. Official Capacity Claims

¶38 The District Court awarded attorneys' fees to the Council Members for Germann's official capacity claims on the grounds that longstanding jurisprudence dictates that there is no need for plaintiffs to bring official capacity claims when plaintiffs can sue the municipality directly. The U.S. Supreme Court stated over 20 years ago that plaintiffs no longer need to bring official capacity claims against local government officials. *Kentucky v. Graham* (1985), 473 U.S. 159, 167, n.14, 105 S.Ct. 3099, 3106, n.14, 87 L.Ed.2d 114. The Court reasoned that official capacity claims generally represent only another way of

14

pleading an action against an entity of which an officer is an agent. *Graham*, 473 U.S. at 165, 105 S.Ct. at 3105. Germann's official capacity claims against the Council Members constitute causes of action that do not provide for personal liability against the Council Members. The City remains ultimately liable for the actions of its employees in official capacity claims. *Graham*, 473 U.S. at 169, 105 S.Ct. at 3107. The Ninth Circuit has determined that causes of action that do not provide for liability against the named defendants constitute unreasonable claims, entitling the prevailing defendant to attorneys' fees. *Morse v. North Coast Opportunities, Inc.* (9th Cir. 1997), 118 F.3d 1338, 1343. We agree.

¶39    It appears that reasonable diligence and inquiry by Germann into the law would have revealed that her official capacity claims not only were unnecessary, but inadequate to provide for personal liability against the Council Members. *Margolis v. Ryan* (9th Cir. 1998), 140 F.3d 850, 854. At the very least, the Council Members demonstrated to Germann that clearly established law dictated that her official capacity claims were duplicative and unnecessary when they filed their brief in support of their motion for summary judgment on July 16, 2003. It was thereafter unreasonable for Germann to persist in her official capacity claims against the Council Members. *Thomas*, 410 F.3d at 647. The District Court did not abuse its discretion in awarding the Council Members attorneys' fees for Germann's § 1983 official capacity claims and for Germann's pendent state law claims. *Mateyko*, 924 F.2d at 828. We reverse and remand, however, for the District Court to limit the amount of attorneys' fees to the amount that the Council Members incurred in defending against Germann's official capacity claims and pendent

15

state law claims after July 16, 2003.

### B. Individual Capacity Claims

¶40　The District Court premised its award of attorneys' fees to the Council Members for Germann's individual capacity claims on the grounds that Germann knew or should have known that § 2-9-305(5), MCA, and our decision in *Kiely* afforded the Council Members immunity from suit. Germann argues that § 2-9-305(5), MCA, serves as a double recovery statute that applies only when a party has recovered against a governmental entity. She further argues that § 2-9-305(5), MCA, cannot immunize the Council Members because state law cannot immunize federal claims under § 1983. The Council Members counter that our decision in *Kenyon v. Stillwater County* (1992), 254 Mont. 142, 835 P.2d 742, and the plain language of § 2-9-305(5), MCA, dictate that § 2-9-305(5), MCA, serves as more than just a double recovery statute. The Council Members further contend that § 2-9-305(5), MCA, does not provide government employees with absolute immunity from § 1983 claims and therefore does not deprive plaintiffs of a remedy for constitutional violations.

> *i.　State Claims Against the Council Members in their Individual Capacities*

¶41　Section 2-9-305(5), MCA, titled "Immunization, defense, and indemnification of employees," provides, in pertinent part, that recovery against a governmental entity means that "the employee whose conduct gave rise to the suit is immune from liability" for the same conduct if the claim arises out of the course and scope of the employee's employment. The explicit grant of immunity in the second sentence of § 2-9-305(5),

16

MCA, belies Germann's contention that the statute serves merely as an anti-double recovery statute.

¶42 We applied this statute to a similar situation in *Kenyon*, 254 Mont. 142, 835 P.2d 742. Former county employee Roberta Kenyon (Kenyon) filed an age discrimination suit against Stillwater County (County) and the County Attorney, C. Ed Laws (Laws). *Kenyon*, 254 Mont. at 145, 835 P.2d at 744. Kenyon based her claim on Laws's decision to discharge her and replace her with a younger woman. *Kenyon*, 254 Mont. at 145, 835 P.2d at 744. She named both the County and Laws as defendants. *Kenyon*, 254 Mont. at 145, 835 P.2d at 744. The district court granted summary judgment to Laws individually on the grounds that Laws was an agent of the County acting within the scope of his authority. *Kenyon*, 254 Mont. at 146, 835 P.2d at 745.

¶43 We upheld the grant of summary judgment, but on different grounds. *Kenyon*, 254 Mont. at 146-47, 835 P.2d at 745. We noted that state law subjects governmental entities to liability for their wrongful conduct and that of their employees acting within the scope of their employment. *Kenyon*, 254 Mont. at 146, 835 P.2d at 745 (citing § 2-9-102, MCA (1987)). We cited § 2-9-305, MCA (1987), in reasoning that where a litigant brings an action against a county based on actionable conduct by a county employee, the employee enjoys immunity from individual liability for the conduct where the county acknowledges that the conduct arose out of the course and scope of the employee's official duties. *Kenyon*, 254 Mont. at 146, 835 P.2d at 745.

¶44 Here the City acknowledged that Germann based her claims upon the conduct of the Council Members taken in the scope and course of their employment. Germann

17

named the City as a defendant based upon the actions of the Council Members in enacting the Emergency Ordinance and Ordinance 00-06, and subsequently denying her applications for conditional use permits. The plain language of § 2-9-305(5), MCA, and our decision in *Kenyon* demonstrate that the Council Members clearly enjoyed immunity from Germann's state law claims. We therefore agree with the District Court's determination that § 1988 entitled the Council Members to attorneys' fees for Germann's state law claims against them in their individual capacities. *Franceschi v. Schwartz* (9th Cir. 1995), 57 F.3d 828, 832. We must still evaluate, however, whether the District Court properly determined that Germann should have known that § 2-9-305(5), MCA, afforded immunity to the Council Members from Germann's federal claims against them in their individual capacities.

> *i.i. Federal Claims Against the Council Members in their Individual Capacities*

¶45 Germann relies on *Martinez v. California* (1980), 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, to support her position that state law cannot immunize federal claims. *Martinez* involved a California statute that purported to provide absolute immunity to government entities and employees from liability for injuries resulting from parole release determinations. *Martinez*, 444 U.S. at 280, 100 S.Ct. at 556. The U.S. Supreme Court concluded that Martinez failed to establish a violation of § 1983, but noted that state law cannot immunize conduct by persons acting under color of state law that violates § 1983. *Martinez*, 444 U.S. at 284, n.8, 100 S.Ct. at 558, n.8.

¶46 Germann further relies on our decision in *Miller v. City of Red Lodge*, 2003 MT 44, 314 Mont. 278, 65 P.3d 562. The plaintiff in *Miller* sued the City of Red Lodge, but

did not bring an action against individual government employees. *Miller*, ¶ 27. We held that the doctrines of judicial and quasi-judicial immunity do not afford local government entities immunity from § 1983 actions, overruling our previous decision in *Reisdorff v. County of Yellowstone*, 1999 MT 280, 296 Mont. 525, 989 P.2d 850. *Miller*, ¶ 26. We reiterated our statement from *Reisdorff* that state immunity laws "do not shield the State or its officials from liability based on 42 U.S.C. §1983." *Miller*, ¶ 18 (quoting *Reisdorff*, ¶ 32).

¶47    We distinguish these cases from Germann's claims. In *Martinez*, the statute at issue purported to grant absolute immunity to both the governmental entity and its employees, thereby entirely depriving plaintiffs of a remedy. *Martinez*, 444 U.S. at 280, 100 S.Ct. at 556. Conversely, granting immunity to the Council Members under § 2-9-305(5), MCA, would not deprive Germann of a remedy. She still could pursue an action against the City for the conduct of the Council Members.

¶48    Although we cited to *Reisdorff* in *Miller* for the proposition that state immunity laws do not shield the State or its officials from § 1983 liability, our recitation of that proposition in both cases paints too broadly. In *Miller*, the plaintiff brought an action against only the governmental entity. *Miller*, ¶ 27. We did not squarely address the issue Germann presents--whether state immunity laws afford immunity to government employees for violations of § 1983 where the government entity remains a viable defendant. *Reisdorff*, in turn, relied on *Morrison v. Jones* (9th Cir. 1979) 607 F.2d 1269, 1273, in stating that "state immunity laws . . . do not shield the State or its officials from liability based on . . . § 1983." *Reisdorff*, ¶ 32. *Morrison* addressed a state statute that

19

purported to grant absolute immunity to a governmental employee, without mention of the governmental entity's liability. *See Morrison*, 607 F.2d at 1273. The actual language employed by *Morrison* recognized that "state law immunities . . . *cannot override a section 1983 cause of action.*" *Morrison*, 607 F.2d at 1273 (emphasis added). Again, application of § 2-9-305(5), MCA, would not override Germann's § 1983 action because the City remains liable for the actions of its Council Members.

¶49 The U.S. Supreme Court provided further instruction in *Felder v. Casey* (1988), 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123. *Felder* addressed the application of a Wisconsin notice-of-claim statute to plaintiff's § 1983 action. *Felder*, 487 U.S. at 134, 108 S.Ct. at 2304-05. The Court noted that where state courts entertain a federally created cause of action, "the federal right cannot be defeated by the forms of local practice." *Felder*, 487 U.S. at 138, 108 S.Ct. at 2306. The Court recognized the preemption question at issue, namely whether "the application of the State's notice-of-claim provision to §1983 actions brought in state courts [is] consistent with the goals of the federal civil rights laws, or [whether] the enforcement of such a requirement instead stand[s] as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress[.]" *Felder*, 487 U.S. at 138, 108 S.Ct. at 2306-07, (internal quotations omitted). The Court further noted that the main objective of the civil rights statutes serves to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief. *Felder*, 487 U.S. at 139, 108 S.Ct. at 2307.

¶50 The Court accordingly reasoned that any assessment of the applicability of a state

law to federal civil rights litigation must be made in light of the purpose and nature of the federal right. *Felder*, 487 U.S. at 139, 108 S.Ct. at 2307. To illustrate, the Court observed that "we have held that a state law that immunizes government conduct otherwise subject to suit under §1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." *Felder*, 487 U.S. at 139, 108 S.Ct. at 2307. The Court went on to hold that the burdensome requirements of Wisconsin's notice-of-claim statute conflicted with the remedial objectives of the civil rights laws and federal law thus preempted the state statute. *Felder*, 487 U.S. at 153, 108 S.Ct. at 2314.

¶51 Our recent decision in *Kiely* further illuminates the issue. Kiely Construction (Kiely) brought state and federal claims, including a § 1983 action, against the City of Red Lodge (City) and against individually named City Council members based on the City Council's denial of Kiely's subdivision plat application. *Kiely*, ¶¶ 8, 12. The District Court granted summary judgment to the individually named City council members, concluding that § 2-9-305(5), MCA, provided immunity from suit. *Kiely*, ¶ 14.

¶52 We determined that Kiely failed to demonstrate a § 1983 claim on appeal. *Kiely*, ¶ 47. We then addressed whether the District Court properly dismissed the individual defendants before trial based on § 2-9-305(5), MCA. *Kiely*, ¶¶ 78-90. All of Kiely's alleged complaints turned on actions performed by the individually named defendants while serving as members of the city council. *Kiely*, ¶ 88. As a result, we determined that the district court properly dismissed the individual defendants in light of the fact that allowing Kiely to collect damages from both the City and the council members would

violate the first sentence of § 2-9-305(5), MCA. *Kiely*, ¶ 88.

¶53 Although we did not address the application of the second sentence of § 2-9-305(5), MCA, we upheld the district court's decision to dismiss the individual defendants before trial and thus before any determination of liability under § 1983 and before any recovery from the City. *Kiely*, ¶ 88. Our holding therefore suggests that § 2-9-305(5), MCA, affords immunity to government employees under § 1983 where the government entity remains a viable defendant for the same course of conduct.

¶54 We turn to the application of § 2-9-305(5), MCA, to Germann's federal law claims and whether the District Court properly concluded that § 1988 entitled the Council Members to attorneys' fees because Germann knew or should have known that § 2-9-305(5), MCA, shielded the Council Members from suit. The main objective of § 1983 serves to ensure that individuals who have suffered a deprivation of their constitutional or statutory rights are afforded relief through damages or injunctive relief. *Felder*, 487 U.S. at 139, 108 S.Ct. at 2307. Our analysis of the applicability of § 2-9-305(5), MCA, to Germann's federal claims must be taken in light of this objective.

¶55 The District Court's determination to afford immunity to the Council Members for Germann's federal claims against them in their individual capacities under § 1983 does not immunize fully the governmental conduct of which Germann complains. The City has acknowledged that the Council Members acted within the scope and nature of their employment when they undertook the actions giving rise to Germann's complaint. Granting immunity to the Council Members would not deprive Germann of a remedy against the City for these same actions. *See Monell v. New York City Dept. of Social*

*Services* (1978), 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (holding that § 1983 subjects municipalities and other local government units to liability). Indeed, to succeed on her claims against the City would require Germann to prove the same set of alleged facts as her claim against the Council Members. Affording immunity from Germann's federal claims to the Council Member's under § 2-9-305(5), MCA, would not thwart the objectives of § 1983.

¶56 We disagree, however, with the District Court's determination that Germann should have known that § 2-9-305(5), MCA, affords the Council Members immunity from Germann's federal claims. The District Court relied upon § 2-9-305(5), MCA, and *Kiely* in determining that Germann should have known that the Council Members were immune from federal claims. *Kiely* indicates that § 2-9-305(5), MCA, affords immunity to government employees under § 1983 where the government entity remains a viable defendant for the same course of conduct. It does not, however, explicitly hold so. We based our decision in *Kiely* on the first sentence of § 2-9-305(5), MCA, but it is the statute's second sentence that grants immunity to government employees.

¶57 Given the ambiguity of *Kiely's* holding and the prolixity of analysis necessary to conclude that § 2-9-305(5), MCA, affords immunity to government employees for federal claims where the governmental entity remains a viable defendant, we cannot conclude that Germann should have known that § 2-9-305(5), MCA, shielded the Council Members from her federal law claims. Accordingly, we cannot deem unreasonable her federal claims against the Council Members in their individual capacities. Section 1988 therefore does not entitle the Council Members to attorneys' fees for their defense of

Germann's federal claims against them in their individual capacities.

¶58    4. *Whether the District Court abused its discretion by denying Germann's motion for costs incurred in preparation for a mandatory settlement conference.*

¶59    The Scheduling Order required the parties to hold a settlement conference before January 21, 2005. It further provided that failure of counsel to adhere to this Scheduling Order could result in sanctions. Germann argues that the City failed to participate in the settlement conference in good faith by sending a representative with no settlement authority and by failing to notify her that the settlement conference would be futile. The City counters that it had no duty to make a settlement offer and that it participated in the settlement conference as required by the Court's Rule 16 Scheduling Order.

¶60    Rule 16(a), M.R.Civ.P., allows courts to create scheduling orders, wherein a court can require parties to attend settlement conferences to facilitate the settlement of a case. Rule 16(f) authorizes courts to impose sanctions against a party who fails to comply with a scheduling order or fails to participate in good faith, including the expenses incurred as a result of noncompliance. *Vermeer of Washington, Inc. v. Jones*, 2004 MT 77, ¶ 12, 320 Mont. 435, ¶ 12, 87 P.3d 516, ¶ 12; Rule 16(f), M.R.Civ.P. The City revealed to Germann before the settlement conference that its representative "has extremely limited settlement authority." The City suggested pushing back the settlement conference by two weeks to allow the City's representative to "potentially [gain] some greater authority." The City noted, however, that it did not believe that there was much settlement value to the case. The record does not disclose the actual settlement authority vested in the City's representative.

¶61　The City concedes that its representative's authority may have been "extremely limited." Courts have recognized, however, that sending representatives with very little authority does not necessarily constitute grounds for sanctions. *E.g., Halaby, McCrea & Cross v. Hoffman* (Colo. 1992), 831 P.2d 902, 908. The Rule 16 Scheduling Order here merely required the parties to attend a settlement conference. The City attended the conference as required by the court. The City declined to offer Germann a settlement, but failure to settle a case, without more, does not constitute grounds for sanctions. *National Ass'n of Gov't Emp., Inc. v. Nat. Feder. of Fed. Emp.* (5th Cir. 1988), 844 F.2d 216, 223. The City candidly informed Germann before the settlement conference that its representative had limited authority to settle and that it did not believe there was much potential for settlement.

¶62　The District Court determined that Germann was not entitled to sanctions for the City's conduct. The district court sits in the best position to evaluate whether litigants have abused the rights of other parties during the course of litigation. *Seal*, ¶ 26. We therefore conclude that the District Court did not abuse its discretion in denying Germann's motion for sanctions.

## CONCLUSION

¶63　We affirm the District Court's decision to grant summary judgment to the City on Germann's state and § 1983 claims based on Germann's lack of a protected property interest. We affirm the District Court's decision to dismiss Germann's claims against the Council Members for the same reason. We also affirm the District Court's award of attorneys' fees to the Council Members for all of Germann's state law claims against the

25

Council Members. We affirm in part the District Court's award of attorneys' fees to the Council Members for Germann's federal official capacity claims, but we reverse the award of fees incurred before the Council Members filed their brief in support of their motion for summary judgment on July 16, 2003. We reverse the District Court's award of attorneys' fees for Germann's federal claims against the Council Members in their individual capacities. We remand to the District Court for the limited purpose of recalculating attorneys' fees in light of this ruling. Finally, we affirm the District Court's denial of costs to Germann based on her claim of bad faith by the City with respect to the settlement conference.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE