FILED

10/14/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0102

DA 25-0102

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 233N

CHAD STONE,

      Plaintiff and Appellant,

  v.

CITY OF LIVINGSTON, CITY OF LIVINGSTON
POLICE DEPARTMENT, and COURTNEY LAWELLIN,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DV-34-2024-24
                  Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Chad Stone, Self-Represented, Livingston, Montana

      For Appellees:

      Harlan B. Krogh, Derek R. Graves, Crist, Krogh, Alke & Nord, PLLC,
      Billings, Montana

                         Submitted on Briefs:  August 27, 2025

                                  Decided:  October 14, 2025

Filed:

                  _____
                                Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Chad Stone appeals the January 2025 order from the Montana Sixth Judicial District Court, Park County, granting summary judgment in favor of the City of Livingston, Livingston Police Department, and Courtney Lawellin (collectively, Defendants) on Stone's state and federal malicious prosecution and constitutional violation claims. We affirm.

¶3 According to the M. R. Civ. P. 56 record here, on August 26, 2020, Stone went to the City County Complex in Livingston, Montana, with his five-year-old son to confront then-County Attorney Kendra Lassiter.[1] Upon encountering a locked office door, Stone demanded it be opened. When he met Lassiter face-to-face, he cornered her against a wall and commenced a profanity-laced tirade that drew attention from other staff and culminated in law enforcement escorting him out of the building, where Stone continued to yell and cuss at officers. Outside, police observed Stone's young daughter in a car seat

---

[1] Stone later explained in his complaint that he confronted Lassiter to "address ongoing injustices and harassment endured from law enforcement" and Lassiter's "inability to prosecute [his] neighbors who were habitually false[ly] reporting to law enforcement that [he] was involved in some illegal or nefarious activities."

inside Stone's car with the windows up and engine off. It was in the 80s that day, and Stone's car was parked in the direct sun. After Stone left, he repeatedly called the County Attorney's office and berated the staff.

¶4 Two days later, on August 28, 2020, a Livingston police sergeant contacted Stone by phone to inform him that he had several citations to serve. Stone immediately hung up. When the sergeant called back, he left a voicemail explaining there were four citations arising out of the August 26, 2020 incident—misdemeanor assault, disorderly conduct, harassment by electronic communication, and endangering the welfare of a child.[2] The sergeant said Stone could pick up the citations at the Livingston police department and informed Stone of the court date scheduled for his initial appearance. Stone did not call back, pick up the citations, or appear. The municipal court judge issued a bench warrant for failure to appear on October 6, 2020.

¶5 On October 14, 2020, when Stone was at the City County Building exchanging custody of his son with his ex-wife, Livingston police officers arrested him on the bench warrant. Though Stone protested, he submitted to arrest. His case was set for trial. The day before trial, Stone, through counsel, sought to vacate trial and transfer venue out of Park County, where he thought he could not obtain a fair trial. The same day, the court vacated trial and transferred venue. However, Stone's case was never (1) transferred out of Livingston City Court, (2) fully prosecuted, or (3) dismissed.

---

[2] Former City Attorney Lawellin prosecuted the offenses.

3

¶6　In February 2024, Stone filed a pro se civil complaint alleging "malicious prosecution," "false arrest," "defamation of character," and violations of the First, Second, Fourth, Fifth, and Fourteenth Amendments. In essence, Stone claimed (1) he was wholly unaware of the pending charges until his October 14, 2020 arrest; and (2) the city prosecutor lacked probable cause to charge him. Stone sought 1 million dollars in damages from each defendant. Defendants answered, generally denying Stone's claims and asserting they were barred by prosecutorial immunity. In late February, the District Court issued a scheduling order setting, among other things, pre-discovery disclosure and final discovery deadlines.

¶7　In mid-March, Defendants sought leave to file an amended answer. They served their motion and proposed amended answer on Stone at the mailing address Stone provided on his complaint.[3] Without response, Defendants filed their amended answer in early April 2024 on leave of court. In late April 2024, Stone filed a motion to "continue," "compel information," "vacate decision," and "for contempt." Stone complained that he did not receive notice of Defendants' motion, which impeded his ability "to respond effectively," and asked they be held in contempt and that the court vacate its order granting them leave to amend. Stone also alleged that Defendants were withholding discovery of law enforcement interactions and communications with him, including "unprosecuted charges," and asked the court to compel discovery and extend deadlines.

---

[3] Later, in response to Stone's claim he did not receive this motion, Defendants supplied the affidavit of their law firm's administrative assistant attesting that she personally mailed all filings to Stone at the address on his complaint.

4

¶8    Defendants answered that it was Stone, not them, who failed to comply with discovery, specifically, that Stone had yet to serve his pre-discovery disclosure statement or complete his responses to Defendants' first interrogatories and requests for production, which were 10 days overdue.  On June 10, 2024, the District Court denied Stone's motions, except his motion to continue proceedings, and issued an amended scheduling order.  The court ultimately set a final discovery deadline for October 25, 2024, and a motions deadline for December 13, 2024.

¶9    On December 12, 2024, Defendants filed a motion for summary judgment.  They claimed entitlement to summary judgment that (1) Stone's state malicious prosecution claims against former City Attorney Lawellin and the City were barred by prosecutorial immunity;[4] (2) Stone's federal malicious prosecution claim failed because probable cause supported the August 2020 citations and Stone's October 2020 arrest; (3) Stone's claim against the City failed the two-prong test for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978); (4) Stone's claims against Lawellin in her individual capacity failed under § 2-9-305, MCA, and *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009); and (5) Stone's other constitutional claims failed for lack of proof.

¶10    On appeal, Stone raises numerous issues, including that the District Court violated due process and denied him a fair trial because it granted summary judgment without

---

[4] Citing §§ 2-9-101, -102, and 7-32-4103, MCA, Defendants asserted that the municipal "Livingston Police Department" was not a separate "governmental entity or political subdivision subject to entity liability," but rather, that the City was the only proper entity party.

allowing him to conduct discovery or respond to the Defendants' motion, did not order mediation, and did not recuse and invite another judge to assume jurisdiction. Stone also claims the court erroneously granted summary judgment where genuine issues of fact remained on his claims, specifically, the question of whether the charges against him and his subsequent arrest were based on probable cause.[5] Defendants contend that the District Court correctly granted summary judgment and that Stone did not preserve his other asserted errors for appellate review.

¶11    Stone's claim that he was not able to conduct discovery is without merit; he conducted discovery and never objected to any responses or non-responses. Defendants assert that, instead of providing his pre-discovery disclosures or answering their discovery requests as ordered, Stone only served Defendants with his discovery requests on June 26, 2024, which they promptly answered. Here, Stone asserts that the Defendants' failure to disclose "officer identities," "arrest communications," and "evidence of summons" "crippled" his ability to make his case. However, in their discovery disclosures and responses, the Defendants identified all officers involved in the August 2020 incident and Stone's October 2020 arrest, produced police reports regarding both incidents, and provided the City's "entire" 95-page file related to Stone, including witness statements. The City also reached out to Stone in July 2024 regarding scheduling his requested depositions. The Defendants did not, however, produce any evidence that they properly

---

[5] Specifically, Stone asserts that his claims of malicious prosecution, false arrest, defamation, and First, Second, Fourth, Fifth, and Fourteenth Amendment violations "stem from baseless charges—disturbing the peace, child endangerment, assault, and more—initiated without a summons, culminating in a humiliating arrest on October 14, 2020, for 'failure to appear.'"

served Stone with the citations/notices to appear, despite Stone's specific discovery request for that information, and instead pointed to the citations themselves and the Livingston police sergeant's report indicating he called Stone, informed him of the charges and upcoming court date, and instructed him to pick up the citations at the police station. Although there is no record that any citation, summons, or notice to appear was served on Stone either personally or by first-class mail in satisfaction of §§ 46-6-211(2) and -213(2), MCA, Stone did not challenge Defendants' answers or objections any time between receipt in July 2024 and the Defendants' December 2024 summary judgment motion.[6]

¶12 Stone's contention that he was denied an opportunity to respond to the Defendants' summary judgment motion is also without merit. Stone's response to the Defendants' motion for summary judgment was due on or before January 6, 2025. *See* MUDCR 2(b); M. R. Civ. P. 56(c)(1)(B); and M. R. Civ. P. 6(d). Stone did not respond within that time. Instead, on January 8, 2025, at 11:28 a.m., Stone filed a document he titled a motion for summary judgment, signed and certified as served "by mailing a true and correct copy" to Defendants on January 6, 2025 ("Stone's pre-summary judgment filing"). At 11:57 a.m., 30 minutes after the clerks stamped Stone's pre-summary judgment document as filed, the District Court judge electronically signed the court's order granting the Defendants' motion for summary judgment, dismissing Stone's claims, and noting that Stone had not filed a

---

[6] Though Stone filed a motion to "continue," "compel information," "vacate decision," and "for contempt" in April 2024, he did so months before the Defendants answered his discovery requests and never filed any motion related to the Defendants' responses/objections after receiving them.

response ("Summary Judgment Order").[7]  We will consider Stone's pre-summary judgment filing as a response to the Defendants' motion for summary judgment and as Stone's independent summary judgment motion because titles to filed documents are not dispositive as to their effect.  *See Miller v. Herbert*, 272 Mont. 132, 136, 900 P.2d 273, 275 (1995).

¶13    Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  M. R. Civ. P. 56(c)(3).  A party opposing a motion for summary judgment "must file a response, and any opposing affidavits."  M. R. Civ. P. 56(c)(1)(B).  The opposing party

> may not rely merely on allegations or denials in its own pleadings; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

M. R. Civ. P. 56(e)(2).  *Accord Renenger v. State*, 2018 MT 228, ¶ 6, 392 Mont. 495, 426 P.3d 559 (the non-moving party "must present material and substantial evidence, rather than mere conclusory or speculative statements," to raise a genuine issue of fact).  Here, Stone did not address any of the bases upon which the Defendants sought summary judgment and did not "set out specific facts showing a genuine issue for trial" in his pre-summary judgment filing.  Instead, he relied solely on his pleading allegations.

---

[7] The clerk docketed Stone's pre-summary judgment filing after the court's Summary Judgment Order.

8

Accordingly, Stone's filing did not suffice as a Rule 56(c)(1)(B) or (e)(2) response to the Defendants' motion and could not defeat summary judgment.

¶14 Next, we address whether the District Court should have considered Stone's pre-summary judgment filing as his independent motion for summary judgment. The District Court set a motions deadline for December 13, 2024; Stone did not seek leave of court to file a summary judgment motion after that deadline and does not explain why. We have repeatedly said that "it is reasonable to expect all litigants, including those acting pro se, to adhere to procedural rules." *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. Because the motion was untimely and filed without leave of court, the court did not have to consider it. Moreover, Stone cannot show that, even if the court considered his motion, it would have led to a different result here. *Accord Fenwick v. State*, 2016 MT 80, ¶ 35, 383 Mont. 151, 369 P.3d 1011 ("no civil case shall be reversed" for an error that "would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless"). Stone's asserted questions of fact are immaterial where immunity bars his claims in the first instance.

¶15 Stone alleged claims of "malicious prosecution," "false imprisonment," "defamation of character," and First, Second, Fourth, Fifth, and Fourteenth Amendment violations arising out of City Attorney Lawellin's decision, on behalf of the City of Livingston, to charge Stone for his conduct on August 26, 2020, and his subsequent October 14, 2020 arrest. As a threshold matter, Stone did not develop any defamation or First, Second, or Fifth Amendment violation theories with record evidence or legal argument sufficient to withstand Rule 56; we therefore affirm dismissal without reaching

9

their elements. Also, because he did not specify otherwise, we construe Stone's Fourth and Fourteenth Amendment violation claims as encompassed in his federal malicious prosecution claim.

¶16 As for Stone's state malicious prosecution claims, it is undisputed that City Attorney Lawellin was acting within the scope of her duties as a city attorney when she initiated charges against Stone for the events on August 26, 2020—a core prosecutorial function. When a prosecutor acts within the scope of her duties "by filing and maintaining criminal charges," she "is absolutely immune from civil liability, regardless of negligence, or lack of probable cause." *State ex rel. Dep't of Justice v. Eighth Jud. Dist. Ct.*, 172 Mont. 88, 92, 560 P.2d 1328, 1330 (1976); *Rosenthal v. Madison Cnty.*, 2007 MT 277, ¶¶ 29-30, 339 Mont. 419, 170 P.3d 493; *Renenger*, ¶¶ 10, 22; *accord Rupnow v. Mont. State Auditor & Comm'r of Ins.*, 2024 MT 14, ¶¶ 9-10, 23, 415 Mont. 81, 542 P.3d 384. We have held that prosecutorial immunity extends to the State and its counties. *State ex rel Dep't of Justice*, 172 Mont. at 92-93, 560 P.2d at 1330; *Rosenthal*, ¶ 25; *Renenger*, ¶ 9 (citing *State ex rel Dep't of Justice* and *Ronek v. Gallatin Cnty.*, 227 Mont. 514, 516-19, 740 P.2d 1115, 1116-18 (1987)). Therefore, Lawellin, and by extension, the City, enjoyed prosecutorial immunity from Stone's malicious prosecution claims under the above-cited cases, regardless of whether the charges were based on probable cause.

¶17 Stone also asserted a federal claim of malicious prosecution under *Thompson v. Clark*, 596 U.S. 36, 42-44, 142 S. Ct. 1332, 1336-38 (2022). There, the Supreme Court recognized a 42 U.S.C. § 1983 claim under the Fourth Amendment analogous to the common law tort of malicious prosecution based on "wrongful initiation of charges without

10

probable cause." Here, the Rule 56 record shows that the August 2020 citations for misdemeanor assault, disorderly conduct, harassment by electronic communication, and endangering the welfare of a child were supported by probable cause, including numerous eyewitness statements and contemporaneous responding police officer reports. *See Renenger*, ¶ 15 ("showing of a mere probability that a defendant committed the offense charged is sufficient to establish probable cause" for an information or complaint). *Thompson* did not disturb absolute prosecutorial immunity or *Monell*'s two-prong test for municipal liability. Stone's claim that Lawellin and the City initiated charges against him illegally under *Thompson* fail. We hold that the District Court correctly granted Defendants summary judgment and dismissed Stone's state and federal malicious prosecution claims.

¶18 As for Stone's false imprisonment claim, City Attorney Lawellin did not participate in his October 14, 2020 arrest and therefore cannot be liable for any alleged constitutional violation. In his complaint, Stone did not name the judge who issued the warrant for his arrest or the individual executing officers, which leaves only the City of Livingston and its police department as potentially liable for an unlawful arrest. Municipal liability is governed exclusively by *Monell*. The only way to impose civil liability on a local government, like the City, under 42 U.S.C. § 1983 is by proof that a formal or informal government policy, custom, or practice in fact caused a constitutional deprivation. *Miller v. City of Red Lodge*, 2003 MT 44, ¶¶ 19-21, 314 Mont. 278, 65 P.3d 562 (citing *Monell*). *Monell* liability requires proof that (1) the plaintiff possessed a constitutional right of which he was deprived; and (2) the municipality had a policy which "amounts to a deliberate

11

indifference to the plaintiff's constitutional right" and was "the moving force behind the constitutional violation." *Tia Tam LLC v. Missoula Cnty.*, 2022 MT 229, ¶ 24, 410 Mont. 465, 520 P.3d 312 (citation omitted); *accord Miller*, ¶ 21 (the plaintiff "must demonstrate a direct causal link" between the municipality's action and "a deprivation of federal rights"). Even if Stone, arguendo, could establish a constitutional deprivation here—arrest on a warrant issued for failure to appear on a record that does not establish notice—he did not identify any formal or informal City policy, practice, or custom as the cause of the alleged constitutional deprivation, much less link that policy directly to his October 14, 2020 arrest. Therefore, Stone failed to make a prima facie case of *Monell* liability, and the District Court correctly granted Defendants summary judgment and dismissed Stone's municipal liability claims.

¶19 As for Stone's claims against Lawellin in her individual capacity, Lawellin is immune from personal liability under § 2-9-305, MCA. Section 2-9-305, MCA, generally protects public officers and employees from individual personal liability "for their actions taken within the course and scope of their employment," save limited exceptions for conduct constituting "oppression, fraud, or malice" that does not arise out of the course and scope of employment. *See Rosenthal*, ¶¶ 24-30. Again, it is undisputed that Lawellin's initiating criminal charges against Stone was within the course and scope of her employment as City Attorney. Further, Stone offered no proof that Lawellin's conduct in prosecuting him was not protected under the general immunity protections of § 2-9-305,

12

MCA. Accordingly, Stone was barred from recovering any damages from Lawellin in her individual capacity under state law. *See* § 2-9-305(5), MCA.[8]

¶20 Lawellin is also personally protected by qualified immunity under *Pearson*, which provides that individual government officials are immune from 42 U.S.C. § 1983 civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231-45, 129 S. Ct. at 815-23 (law enforcement officers were entitled to qualified immunity, and thereby immune from civil damages, because their conduct was not a constitutional violation). As with his claim against the City, Stone did not establish how Lawellin's initiating and prosecuting a case against him for his conduct at the City County Building violated his constitutional rights. Accordingly, Stone also fails *Pearson*. The District Court correctly granted Defendants summary judgment and dismissed Stone's claims against Lawellin in her individual capacity.

¶21 Finally, we agree with the Defendants that Stone did not properly preserve his claims regarding recusal, failure "to provide transcripts," and failure to order mediation. "It is well established that this Court will not review an issue that was not raised in the district court." *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 36, 321 Mont. 364, 91 P.3d 569. Stone never sought substitution or alleged judicial bias below. Stone

---

[8] Lawellin's individual immunity under state law did not, by itself, foreclose recovery from Lawellin's employer, the City of Livingston, under 42 U.S.C. § 1983. However, the only way to recover from the City was by establishing *Monell* liability, which, for reasons stated above, Stone failed to do. *See Germann v. Stevens*, 2006 MT 130, ¶¶ 40-55, 332 Mont. 303, 137 P.3d 545.

13

does not identify what transcripts were not provided, did not identify any transcripts in his discovery requests, and we cannot ascertain from our review of the record what transcripts he is referring to.[9] Though the District Court scheduled mediation in its amended scheduling order, resolving the case on summary judgment mooted mediation.

¶22 We hold that the District Court correctly granted Defendants' motion for summary judgment and dismissed all Stone's claims against them with prejudice. We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

---

[9] Stone cites to "Transcript" and "Motion for Transcripts" in his brief on appeal, but there are no transcripts of record here or below.